[Nos. B101583, B104345. Second Dist., Div. Four. July 30, 1997.]

OCEANSIDE 84, LTD., Plaintiff and Appellant, v.
FIDELITY FEDERAL BANK, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

1442

**COUNSEL**

Perona, Langer & Beck, R. Paul Katrinak, Major A. Langer and Ellen R. Serbin for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Martin C. Washton and Jody L. Johnson for Defendant and Respondent.

**OPINION**

EPSTEIN, J.—In 1987, plaintiff and appellant Oceanside 84, Ltd., a limited partnership (appellant), borrowed $2.45 million from defendant and respondent Fidelity Federal Bank (Fidelity). According to the terms of the loan

agreement, Fidelity was authorized to adjust the interest rate charged to appellant every six months. In 1993, appellant filed a lawsuit for breach of contract and unfair trade practices against Fidelity, alleging that Fidelity was overcharging interest. In brief, the allegations of the complaint centered around the date that Fidelity selected to recalculate interest payments on appellant's loan. Fidelity's motion for summary adjudication was granted as to the unfair trade practices cause of action in May 1994. Fidelity filed a motion for class certification, and the issue of liability was bifurcated and tried before the court prior to a determination of the class certification motion. Judgment was entered on behalf of Fidelity in February 1996, and appellant appealed (No. B101583), contending the trial court erred in denying its request for jury trial and in interpreting the terms of the contract. In April 1996, the trial court granted Fidelity's postjudgment motion for attorney's fees and appellant filed a second appeal (No. B104345). Both appeals were consolidated by order of this court in October 1996. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Loan Documents*

Appellant's general partners executed a promissory note and an amendment (the Amendment) in favor of Fidelity, dated September 4, 1987. The promissory note (the Note) reflects "value received" in the full amount on September 4 and appellant promised to pay the principal sum of $2.45 million with interest at the rate of 8.5 percent per annum, payable in monthly installments of $18,838.38 on the first day of every month, beginning November 1, 1987, and continuing until October 1, 2017. Each .payment "shall be credited first on interest then due and the remainder on principal."

The Amendment modified the Note to add provisions regarding interest rate adjustments, which included the following: "The initial interest rate specified in the Note shall be adjusted by increasing or decreasing the interest rate beginning with the 6th month after the first payment and every 6 month(s) thereafter. *All adjusted interest rates shall be established on the 26th day of the applicable month* by adding a rate differential of 2.250% to the following index: the most recent available monthly weighted average cost of Savings, Borrowings and Advances by the Federal Home Loan Bank of San Francisco ('Bank') to the 11th district members of the Bank based on statistics tabulated by the Bank."[1] (Italics added.) The Amendment further provided that "No prior notification of interest rate adjustments shall be required."

Fidelity sent appellant its first notice of interest rate change (change notice) on February 26, 1988. The new rate was based on the 11th District

---

[1] For simplicity's sake, we shall refer to this index as the "11th District Index."

rate, which was announced on the last working day of the previous month —in this case, January 29, 1988. The change notice indicated that a new monthly payment would be effective May 1, 1988, that the interest rate would be 9.5 percent, based on a "present index" of 7.645. As in the loan documents, the change notice specified that that rate differential or margin was 2.250 and that the interest rate would be adjusted every 6 months. The change notice indicated that the next scheduled payment adjustment would be November 1, 1988, and provided a name and telephone number to call for further information. Change notices were sent every six months thereafter (on August 26th and February 26th of each successive year). Each change notice was identical in form and informed appellant of an adjusted payment to be made approximately 65 days later (in November and May of each successive year) and provided a history of rate adjustments.

In 1992, appellant, apparently after learning that some banks were overcharging interest, made inquiries regarding Fidelity's practices and filed this lawsuit. The gist of appellant's lawsuit is that by calculating changes in its payments 65 days before payment was due, Fidelity was overcharging interest. Fidelity's defense was essentially that calculation of the interest rate change 65 days in advance was necessary in order to compute the applicable interest rate and to send notice to its borrowers of the impending payment change.

*The motion for jury trial*

At a pretrial status conference the court ordered the parties to submit briefs on the issue of whether appellant's request for a jury trial should be granted. A hearing was set on March 17, 1995, but there is nothing in the record which indicates that such a hearing was held. We assume the request was denied since the court's minutes dated May 19, 1995, indicate that the matter was trailing as a nonjury trial.

*Trial Testimony*

At trial, Myron Mueller, Fidelity's loan service manager, testified that his understanding of the term "applicable month" based on existing practices at Fidelity since 1986 and in effect at during the relevant time period,[2] was "the month in which the index would be reviewed in this case to determine the rate change and/or the corresponding payment change." He was not aware of any other custom and practice in the industry other than to abide by the terms of the loan documents. The interest rate on appellant's loan and other

---

[2]It was established that Fidelity's internal procedures had changed subsequent to the filing of the lawsuit.

adjustable rate mortgages was adjusted approximately 65 days prior to the payment change date. This time period was necessary to allow review of the 11th District Index and to send notices to borrowers. The 11th District Index was released by the Federal Home Loan Bank of San Francisco on the last day of each month and was available late that day or the next day. Mueller explained that a fairly detailed process takes place before adjustable rate mortgage notices are sent to customers. First, a preliminary report was issued which indicated whether certain loans had to be reviewed individually for special circumstances. Then the appropriate interest rate indices had to be input into the computer system, and the indices had to be verified. The change notices were generated on the 26th day of the month and were mailed the following day. Notices were sent to customers well in advance of the actual payment change date because there could be significant increases in payments, and the notice period allowed borrowers to prepay their loans or refinance. No distinction was made between the notices sent to individual and commercial borrowers, although federal regulations only required notice to be given to individuals.

According to Mueller, apart from the change notices, no other explanation of the computation of the interest rate changes was given to the customers, but customers did call the telephone number provided on the change notices to obtain information regarding the interest rate indices.

Mueller testified that appellant made all monthly payments on a timely basis.

Bernard Lomax, appellant's expert on the financial industry, testified that it was customary to calculate interest rate adjustments in accordance with the terms of the promissory note. He testified, according to his review of appellant's loan documents, that the "applicable month" for an interest rate change would be the month immediately preceding the date of the authorized change in payment, for example the May payment change should be computed on April 26, and that there would be no reason to calculate the interest rate any earlier.

Steven Spierer, one of appellant's general partners and an attorney at law, testified that he did not negotiate the terms of the loan documents in any manner with Fidelity. In early 1992, after reading various articles about miscalculations by lenders, Spierer and his partners hired an investigative agency to examine the terms of their loan from Fidelity. After uncovering a discrepancy, they asked Fidelity to correct the problem, but no action was taken. Appellant continued to make payments on the loan. Spierer testified that at that time he had no knowledge of how Fidelity calculated the 11th

District Index rate and that he relied on Fidelity to calculate the interest rate pursuant to the terms of the loan documents.

## The trial court's ruling

The trial court concluded that the facts were undisputed and the matter centered around the interpretation of the term "applicable month." It determined that because the clause could be reasonably interpreted to mean the second month preceding the change of payment date or the third month preceding the change of payment date, the term was ambiguous, as determined by Civil Code section 1643.[3] The trial court did not construe the ambiguity against Fidelity, the drafter of the contract, however, because appellant had accepted the bank's course of conduct in using a review date 65 days prior to the payment date for 5 years without complaint. Further, the court concluded that the change notices were clearly written. Accordingly, the court found in favor of Fidelity as to liability on the breach of contract cause of action.

Appellant contends that the term "applicable month" is not ambiguous, and even if it were, it should be construed against Fidelity, the drafter of the document.

Next, appellant contends that the change notices directly contradict the terms of the loan agreement and that they thus are inadmissible parol evidence. Appellant also contends that its conduct in making payments to Fidelity for a five-year period was inadmissible evidence with respect to interpretation of the loan agreement.

Appellant does not contend that Fidelity made incorrect mathematical calculations, that it changed interest rates more frequently than every six months, or that there was any kind of bank error involved. Appellant contends only that by calculating the interest rate so far in advance, Fidelity used a rate that was no longer in effect by the time the payment actually changed. Appellant argues that no notice was required, either by the terms of the loan documents or federal regulations, so there was no justification for a 65-day advance notice period.

DISCUSSION

I

The core of this dispute is the term "applicable month." The term is not defined in the loan documents. Both parties offered evidence at trial

---

[3]Civil Code section 1643 provides that: "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."

about what they thought it meant. There was no evidence presented that the parties discussed the term "applicable month" at the time the loan documents were executed or that there were any oral representations made regarding the method of calculating interest rate changes. The only communication between Fidelity and appellant is contained in the loan documents and notices of rate changes.

■ Because that is so, the interpretation of the contract is a question of law for the trial court and for this court. (See *Greater Middleton Assn.* v. *Holmes Lumber Co.* (1990) 222 Cal.App.3d 980, 989-990 [271 Cal.Rptr. 917]; *Titan Group, Inc.* v. *Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 [211 Cal.Rptr. 62].)

In deciding the issue, we employ the framework utilized by Division Seven of this district in *Southern Cal. Edison Co.* v. *Superior Court* (1995) 37 Cal.App.4th 839 [44 Cal.Rptr.2d 227]: "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over. (*Consolidated World Investments, Inc.* v. *Lido Preferred, Ltd.* (1992) 9 Cal.App.4th 373, 379 [11 Cal.Rptr.2d 524].) If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean? (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].) [¶] Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself (*United Teachers of Oakland* v. *Oakland Unified Sch. Dist.* (1977) 75 Cal.App.3d 322, 330 [142 Cal.Rptr. 104]) or from extrinsic evidence of the parties' intent (*Winet* v. *Price, supra,* 4 Cal.App.4th at p. 1165)." (37 Cal.App.4th at pp. 847-848.) If a contract is capable of two different reasonable interpretations, the contract is ambiguous. (*Ibid.*)

■ A well-settled maxim states the general rule that ambiguities in a form contract are resolved against the drafter. (Civ. Code, § 1654; *Victoria* v. *Superior Court* (1985) 40 Cal.3d 734, 739 [222 Cal.Rptr. 1, 710 P.2d 833].) But that is a general rule; it does not operate to the exclusion of all other rules of contract interpretation. It is used when none of the canons of construction succeed in dispelling the uncertainty. (*Pacific Gas & Electric Co.* v. *Superior Court* (1993) 15 Cal.App.4th 576, 596 [19 Cal.Rptr.2d 295].)

■ The pertinent reference to "applicable month" in this case appears in the Amendment to the Note. It provides that the "adjusted interest rates shall be established on the 26th day of the applicable month." This reference

follows immediately after a sentence which explains that the interest rate shall be adjusted on the sixth month after the first payment and every six months thereafter. If this is read to mean that the "applicable month" is the sixth month, it would lead to an untenable situation: The adjusted payment cannot be made on the first day of the sixth month since the rate must be ascertained on the twenty-sixth day of that month. Neither party puts forth such an interpretation. Each concedes that the rate must be determined prior to the first day of the sixth month. Because the term is left unresolved by the language of the contract, we are entitled to consider whether it was reasonably susceptible to the meanings urged by the parties.

Appellant contends that the "applicable month" is the month immediately preceding the sixth month. By that reading, the calculation would be computed on April 26th for a change effective May 1. Appellant's retained expert testified that such an adjustment could have been made and would have been reasonable if Fidelity had the resources to immediately advise the customer of the changed payment and the customer was not inconvenienced by the scant notice period. We conclude this is a reasonable interpretation.

Respondent contends that the "applicable month" is the second month preceding the sixth month; in other words, the rate set by the 11th District at the end of January, effective in February, for payment due on May 1. Mueller explained that Fidelity calculated the rate on the 26th day of the 2d month preceding the change for administrative reasons, as a courtesy to a borrowers, and that it was merely following a procedure which was in place prior to appellant's loan. There is no evidence that Fidelity miscalculated or in any way attempted to overcharge appellant on its loan. We conclude this is also a reasonable interpretation.

Since both parties offered reasonable interpretations, we must look to other objective manifestations of the parties' intent. In instances such as this, where there is no evidence that the parties specifically agreed, or even discussed, how the interest rate was to be adjusted, the conduct of the parties after the execution of the contract, and before any controversy arose, may be considered in order to attempt to ascertain the parties' intention. (*Kennecott Corp.* v. *Union Oil Co.* (1987) 196 Cal.App.3d 1179, 1189-1190 [242 Cal.Rptr. 403].) ▇ "It is well settled that although an agreement may be indefinite or uncertain in its inception, the subsequent performance of the parties will be considered in determining its meaning for they are least likely to be mistaken as to the intent. [Citations.]" (*Crawford* v. *Continental Cas. Co.* (1968) 261 Cal.App.2d 98, 102 [67 Cal.Rptr. 641]; *Southern Cal. Edison Co.* v. *Superior Court, supra,* 37 Cal.App.4th at p. 851; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 689, p. 622.)

■■■ Pursuant to the terms of the loan, adjustments are to be made every six months, but not until the sixth month following the first payment, in other words the seventh payment. The loan was originally effective September 4, 1987, and the original interest rate was set on that date, but the first payment was not to be made until November 1, 1987, 58 days after the loan began accruing interest. Therefore, the first payment to reflect an adjustment would be May 1, 1988, almost a full eight months after the initial interest rate was set. In reality, adjustment of the interest rate the second month preceding the adjustment payment date more accurately reflects six-month adjustments from the beginning date of the loan.[4]

Appellant argues that its failure, for five years, to protest respondent's method of calculation cannot be considered because it was unaware of how the calculations were made. But the evidence shows that it was on notice of the month utilized by Fidelity as the "applicable month." Appellant received a dated notice from Fidelity 65 days before the adjusted payment was due. This first notice was dated February 26, 1988, and was mailed on that date or the next day. It advised appellant of the interest rate and payment due for May 1, 1988. It must have been obvious to anyone reading this announcement in February 1988 that it could not have been, and was not, based on the 11th District Index in March or April, or even in February, since the district does not release its numbers until the end of the month.[5] The same reasoning applies to each of the succeeding notices, covering a period of five years.

Fidelity's conduct during the five years subsequent to the execution of the loan documents was consistent and in no way deceptive. Appellant offers no evidence to demonstrate that it had any understanding one way or the other about how the interest rate was being calculated. There was no attempt to inquire about what the term "applicable month" meant at the time the loan was entered into or during the five-year period before the lawsuit was filed. The fact of appellant's payments without objection and the failure to question the method of calculation in the face of periodic notice of rate adjustments, each sent 65 days before the affected payment was due, is the only evidence we have about appellant's intent. Based on that evidence, appellant may be considered to have at least acquiesced in Fidelity's interpretation of

---

[4]We note parenthetically that the time lag in computing the interest rate roughly evened out over the life of the loan. A review of the change notices reveals that the interest rate increased and decreased between 1988 and 1993, from a high of 11.173 percent in November 1989 to a low of 6.610 percent in May 1993. Appellant does not contend that Fidelity changed its method of calculation depending on the direction of the index rate.

[5]Appellant's contention that the trial court erred in admitting evidence of the change notices is without merit. The change notices did not purport to add to or vary the terms of the agreement with appellant, but gave information about Fidelity computations of interest rate changes, and of appellant's awareness of how the computations were made.

the term "applicable month." We conclude the court did not err in deciding there was no breach of contract.

*Entitlement to a jury trial*

■ Appellant contends that since the issue of contract interpretation depended on the credibility of the parties' experts concerning custom and practice in the industry, it was entitled to trial by jury.

We are mindful of the principle that the right to trial by jury is a basic and fundamental part of our system of jurisprudence and that in cases of doubt, the issue should be resolved in favor of preserving a litigant's right to trial by jury. (*Titan Group, Inc.* v. *Sonoma Valley County Sanitation Dist., supra,* 164 Cal.App.3d at p. 1128.) However, "The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] . . . It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

In arguing this issue before the trial court, appellant stated that it proposed to offer the testimony of Bernard Lomax. Mr. Lomax had indicated in deposition testimony that, in his opinion, it was custom and practice in the banking industry to determine an index review date by reference to the language contained in the promissory note. While Fidelity objected to Lomax's qualifications, it did not attempt to assert that the index review date was established by some other document. But, as we have discussed, the note in this case contained no guidance as to what the index review date should be, and there were no conflicting factual assertions regarding the interpretation of that term. The trial court properly determined that the issue in this case involved a matter of law and that appellant was not entitled to a jury trial.

II*

. . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1441.

## DISPOSITION

The judgment is affirmed. Respondent Fidelity shall recover costs on appeal.

Vogel (C. S.), P. J., and Baron, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 1997.