Donald T. DURBIN, an individual,
Plaintiff–Appellant,

v.

NATIONAL LOAN INVESTORS, L.P.;
Does 1 Through 20, Inclusive,
Defendants–Appellees.

Donald T. Durbin, an individual,
Plaintiff–Appellee,

v.

National Loan Investors, L.P.,
Defendant–Appellant,

and

Does 1 Through 20, Inclusive,
Defendant.

Nos. 03–15357, 03–15360.

United States Court of Appeals,
Ninth Circuit.

Submitted: Sept. 13, 2004.*

Decided: Sept. 27, 2004.

---

\* This panel unanimously finds this case suitable for decision without oral argument. *See*  Fed. R.App. P. 34(a)(2).

Lyman D. Bedford, Esq., Robert L. Za-letel, Esq., McQuaid, Bedford & Van Zandt LLP, San Francisco, CA, for Plaintiff–Appellant and Plaintiff–Appellee.

J. Morrow Otis, Esq., Steven L. Irki, Otis Canli & Duckworth, LLP, San Francisco, CA, for Defendants–Appellees and Defendant–Appellant.

George P. Eschoo, Law Offices of George P. Eshoo & Associates, Redwood City, CA, for Defendant–Appellant.

Before: BEEZER, W. FLETCHER, and FISHER, Circuit Judges.

### MEMORANDUM **

Plaintiff–Appellant Donald Durbin entered into a settlement agreement with Defendants–Appellees National Loan Investors, LP ("NLI") and U.S. Bank. The settlement agreement provided that

> Durbin and Lifestyle, on the one hand, and [U.S.] Bank and NLI, on the other hand, hereby release each other of and from any and all claims, demands, and causes of action, known or unknown, now existing or hereafter arising, if any, of whatsoever kind or character, whether arising out of a contract or in tort, as a result of, or arising out of the debtor/creditor relationship that originated from [U.S.] Banks [sic] Bozeman, Montana locations, and the transactions related thereto which occurred prior to the date of this Agreement. It is the express intention of the parties that this Release be construed to the broadest

extent possible to release the parties of and from any liability, claim, and cause of action which arose prior to the date of this Agreement.

At the time of the settlement, Durbin was a guarantor on a corporate line of credit issued to A Montana Lifestyle, Inc. at the Bozeman branch of First Bank Montana N.A., the predecessor in interest of U.S. Bank. Durbin also held a personal line of credit obtained at the Bozeman branch. The district court held that the release did not cover Durbin's personal line of credit because it found that the language above was qualified by another clause of the agreement, which stated that "[i]t is the express intention and desire of all of the parties ... to settle ... any and all claims and causes of action ... which were asserted, or could have been asserted, in the [Montana Action]." In the district court's view, there was no claim or dispute regarding Durbin's personal line of credit that could have been asserted.

"We review the interpretation and meaning of contract provisions de novo." *DP Aviation v. Smiths Indus. Aerospace and Def. Sys., Ltd.*, 268 F.3d 829, 836 (9th Cir.2001). Under California law, when the meaning of a contract is disputed, "the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *Oceanside 84, Ltd. v. Fidelity Fed. Bank,* 56 Cal.App.4th 1441, 66 Cal.Rptr.2d 487, 492 (Ct.App. 1997). Assuming for the sake of argument that the contract is reasonably susceptible to both the interpretation urged by Durbin (that the release covers the personal line of credit) and the interpretation urged by NLI (that it does not), we move to the

---

** This disposition is not appropriate for publication and may not be cited to or by the

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

second stage of inquiry under California law and ask: "what did the parties intend the language to mean?" *Id.*

In the course of the settlement negotiations, NLI proposed a narrow mutual release that would cover only the corporate debt. Durbin proposed a broad mutual release covering any and all debts owed by the corporation or himself to NLI or U.S. Bank. The district court found that in order to break the impasse, Diana Tubbs, on behalf of NLI, suggested limiting the release to debts arising (i.e.originating) from the Bozeman branch of U.S. Bank. Durbin agreed, and NLI drafted the release.

We hold that both parties intended to release Durbin from debts originating from the Bozeman branch. In doing so, we note that ambiguities in contracts are construed against the drafter. *See Fed. Nat'l Mortgage Ass'n v, Bugna,* 57 Cal. App.4th 529, 67 Cal.Rptr.2d 233, 236 (Ct. App.1997). Since, as the district court found, Durbin's personal line of credit originated from the Bozeman branch, we hold that it is covered by the release. Any subjective intent Tubbs or NLI might have had not to release Durbin from his personal debt is irrelevant, as it was not expressed in the settlement agreement. *See Shaw v. Regents of the Univ. of Cal.,* 58 Cal.App.4th 44, 67 Cal.Rptr.2d 850, 856 (Ct.App.1997).

█ NLI argues that if the settlement agreement is construed to release Durbin from his personal line of credit, the agreement should be rescinded for fraud. In California, there are five elements of fraud: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.,* 30 Cal.4th 167, 132 Cal.Rptr.2d 490, 65 P.3d 1255, 1258 (Cal.2003). Setting aside whether Durbin made any false statements or material omissions, we cannot find fraud because there was no reliance by NLI. Suspicious of Durbin's motives in asking for a broader release, Tubbs independently investigated whether Durbin had non-corporate debts originating from the Bozeman branch. Unfortunately for NLI, that investigation did not reveal Durbin's personal line of credit. However, it establishes that NLI did not rely on any false statements or material omissions made by Durbin.

We therefore reverse the district court's judgment that denied all relief to Plaintiff–Appellant. Because we reverse that judgment, Defendants–Appellees have no basis to recover attorneys' fees; we therefore affirm the district court's denial of attorneys' fees.

We REVERSE the district court's judgment on the merits. We AFFIRM the district court's denial of attorneys' fees. Costs on appeal to Plaintiff–Appellant.