Filed 4/22/15  iLink Technology v. Zalinda Farms CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ILINK TECHNOLOGY, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ZALINDA FARMS, INC., et al., <br><br> Defendants and Respondents. | D064901 <br><br><br> (Super. Ct. No. 37-2012-00054465-CU-BC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Tardiff Law Offices, Shea S. Murphy and Neil S. Tardiff for Plaintiff and Appellant.

Law Office of Donald Barker and Donald M. Barker for Defendants and Respondents.

iLink Technology, Inc. (iLink) entered into a contract with Zalinda Farms, Inc. (Zalinda Farms) whereby iLink agreed to perform certain information technology (IT) related services for Zalinda Farms.  As part of the services iLink provided, Zalinda Farms

asked iLink to review the work of Burton G. Wilkins (Wilkins), with whom Zalinda Farms had contracted to create a software program for Zalinda Farms. iLink pointed out some of the problems with Wilkins's work and agreed to provide Zalinda Farms additional services related to the implementation of Wilkins's software. Zalinda Farms ultimately decided not to pay Wilkins for his work.

Wilkins brought suit against Zalinda Farms and its officer Christian Zaleschuk (Christian) for, among other claims, breach of contract. Wilkins also sued iLink and its officer Brian Korn for intentional interference with economic relations and negligent interference with economic relations. iLink and Korn tendered the defense of the action to Zalinda Farms under the indemnity provision of iLink's contract with Zalinda Farms. Zalinda Farms did not agree to defend iLink or Korn.

Wilkins's action eventually settled and the parties entered into a settlement agreement, which was put on the record in court. As part of the settlement, the parties agreed to "waive all claims against each other."

After Wilkins's action was settled, iLink brought suit against Zalinda Farms and Victor Zaleschuk (Victor) for breach of contract, breach of express indemnity, and intentional misrepresentation. The gravamen of iLink's suit was Zalinda Farms's refusal to indemnify iLink for its legal fees and costs in defending Wilkins's action as well as iLink's settlement payment to settle with Wilkins.

iLink's action proceeded to a bench trial and the trial court found in favor of Zalinda Farms. The court entered judgment in favor of Zalinda Farms and Victor, which included an award of attorney fees and costs.

iLink appeals, contending the trial court erred in finding Zalinda Farms was not liable to iLink under the indemnity clause of their contract for the costs and fees it incurred in litigating and settling Wilkins's action. In addition, iLink asserts it did not waive its right to seek indemnity when it settled Wilkins's action.

We conclude that iLink waived all of its claims, including any indemnity claims, against Zalinda Farms when it settled Wilkins's action. As such, we do not reach iLink's remaining arguments regarding the interpretation of its contract with Zalinda Farms and the scope of the subject indemnity provision. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Zalinda Farms was a plant nursery that grew and sold plants both retail and wholesale. Victor owned and was the president of Zalinda Farms while Christian managed the company's day-to-day operations. iLink provides IT consulting, computer repair and other IT related work. Brian Korn is the president of iLink and works as a field technician, an officer, director, and shareholder of iLink. Zalinda Farms and iLink entered into an agreement on December 26, 2007 (iLink Agreement) whereby iLink would install, repair, and/or provide maintenance of Zalinda Farms's computers, hardware, software, peripherals, and network systems.

The iLink Agreement included an indemnity provision: "[Zalinda Farms] agrees to release, indemnify, and hold iLink Technology, its Officers, Employees, Directors, Shareholders, Independent Contractors, Agents . . . harmless from and against any and all claims, liabilities, losses and expenses, including reasonable attorney's fees and court costs, arising out of or attributable to [Zalinda Farms] or the use by [Zalinda Farms] of

3

the products and services iLink Technology provides, relating to or arising under this Agreement."

Prior to entering into the iLink Agreement, Zalinda Farms signed a contract with Wilkins whereby Wilkins would "design, code, test, construct, and install customized software on [Zalinda Farms'] computers and servers . . . ." Specifically, Zalinda Farms tasked Wilkins with writing a program to manage Zalinda Farms's plant nursery operations.

Wilkins had some difficulty installing his program, and Zalinda Farms asked iLink to outline any technical insights it should consider in connection with the installation of Wilkins's program. iLink did so, and to this end, Korn sent an e-mail to Susan Field, Zalinda Farms's office manager, detailing Korn's conversation with Wilkins about the issues Wilkins was experiencing, Korn's concerns about Wilkins's program and abilities, and suggesting Zalinda Farms conduct a "project refocus." As part of this project, Korn recommended that the objectives for Wilkins's computer program project be identified, the scope of the work to be completed clearly defined, and the system and software requirements Wilkins would need to complete his work identified.

Christian then contacted Wilkins and told him to stop all work on the computer program project so that Zalinda Farms could have an opportunity to identify the problems Wilkins was encountering, and formulate a plan to proceed. In response, Wilkins submitted two invoices to Zalinda Farms, the first for $23,425.50, and the second for $2,104.50.

4

Zalinda Farms believed that that the invoices contained inappropriate billing. It thus disputed the amount it owed Wilkins for his work. Ultimately, Zalinda Farms did not pay the invoices.

In early March 2008, Zalinda Farms requested that iLink move forward with its recommended project refocus. As part of this project, Zalinda Farms asked iLink to review Wilkins's software project, identify any issues, and make a suggestion about whether Zalinda Farms should continue with the project, at what cost, and how long it should take to complete. To facilitate iLink's evaluation, Zalinda Farms provided iLink documents and information related to Wilkins's programming work, including Zalinda Farms's contract with Wilkins and Wilkins's invoices.

iLink agreed to provide the requested work and eventually Korn sent an e-mail (Project Refocus E-mail) to Zalinda Farms in which iLink set forth responses to the questions and issues raised by Zalinda Farms regarding Wilkins's work. The Project Refocus E-mail provided a set of questions for Zalinda Farms to consider, and concomitant courses of action to follow depending on how Zalinda Farms answered those questions. As part of iLink's recommendations, it suggested that Zalinda Farms implement "damage control" in dealing with Wilkins going forward. In addition, iLink pointed out that it might be preferable for Zalinda Farms to "[cut its] losses" with Wilkins and pursue other means of achieving its objective. To this end, iLink suggested that Zalinda Farms retain a "good Contract Attorney" to provide legal guidance on the contract with Wilkins and advise "how to get out of it if [Zalinda Farms] determine[d] this a necessary direction."

On June 11, 2008, Wilkins filed a complaint in Riverside Superior Court, case No. RIC500067 (Wilkins Lawsuit). The operative complaint alleged claims for breach of contract and quantum meruit against Zalinda Farms, conspiracy to breach contract against Christian (as officer and/or director of Zalinda Farms), iLink, and Korn; and both intentional and negligent interference with economic relations against iLink and Korn.

Wilkins claimed damages in the amount of $26,282.71 for all his claims. This amount was identical to the amount Wilkins stated he was owed under his contract with Zalinda Farms. The allegations supporting the three claims against iLink focused on communications from iLink to Zalinda Farms, which were aimed to give Zalinda Farms "a step-by-step guide on how [it] could breach the [agreement with Wilkins] so that [iLink] could step in and take over the project." The complaint repeated the phrases "damage control" and "cutting their losses" that appeared in the Project Refocus E-mail.

iLink tendered the defense of the Wilkins Lawsuit to Zalinda Farms. Although at one point it appeared Zalinda Farms would retain an attorney to defend itself and iLink, ultimately Zalinda Farms did not accept iLink's tender and iLink hired its own counsel. iLink therefore incurred legal fees and costs in defending the action.

After retaining its own counsel, iLink informed Zalinda Farms that it intended to file a cross-complaint against Zalinda Farms for indemnity pursuant to the indemnification provision in the iLink Agreement. Zalinda Farms requested that iLink refrain from filing a cross-complaint for indemnity, stating that it would interfere with efforts to settle the Wilkins Lawsuit. Zalinda Farms and iLink agreed that iLink would not file a cross-complaint at that time for tactical reasons, and in exchange, Zalinda

6

Farms would not oppose iLink filing a cross-complaint for indemnity at a later time. This agreement was memorialized in a letter iLink's counsel sent to Zalinda Farms's counsel, which provided in relevant part:

> "This is to confirm that Zalinda Farms, Inc. and Victor Zaleschuck [sic] have agreed that no opposition would be filed in the event a cross-complaint for indemnity on behalf of my clients is filed in the future. We are informed and believe there have been some informal settlement discussions between the plaintiff and your clients, however we understand that no agreement has been worked out between the parties."

The Wilkins Lawsuit settled prior to trial. Zalinda Farms and Christian agreed to pay Wilkins $27,500, and iLink and Korn agreed to pay Wilkins $2,500. Although no written settlement agreement was signed by the parties, they put the terms of the settlement agreement on the record. In reciting the terms for the court, Wilkins's counsel stated, in addition to the payment terms, "[p]arties waive all claims against each other." Later the court repeated the terms to ensure all parties understood the settlement agreement they were entering:

> "So as I understand it, again, the terms are that $2500 will be paid by Mr. Korn within seven days. Upon those payments, he will be entitled to a dismissal with prejudice. [¶] The remaining balance as stated by [Wilkins's counsel], 7500, July 31st, $2000 on or about September 1st, and every month thereafter for nine months is the responsibility solely of Zalinda Farms and Mr. Zaleschuck [sic]. And upon that payment then he will be entitled to a judgment -- or, I'm sorry -- a dismissal with prejudice. [¶] Each side waive their own fees and costs -- or bear their own fees and costs. [¶] Five-day grace and three days notice to cure. [¶] Is that the full settlement?"

Only Wilkins's attorney responded to the court's question to clarify that the parties had waived all claims between each other: "And the parties waive all claims against each

7

other."  Neither Zalinda Farms's counsel nor iLink or Korn's counsel clarified the scope of the waiver.  Specifically, there was no mention whatsoever of iLink's indemnity claim against Zalinda Farms.

All parties then agreed on the record to the settlement.  Indeed, Korn, who admitted he was the president of iLink, represented to the court that he understood the terms of the settlement and would abide by its terms.  Korn and iLink's counsel requested clarification of the timing of the dismissal of the lawsuit against his clients, but made no mention of iLink's indemnity claim against Zalinda Farms.

As a result of the Wilkins Lawsuit, iLink paid $23,992.77 in attorney fees and costs to defend the suit, plus $2,500 to settle the matter.  After settling the lawsuit, iLink demanded that Zalinda Farms reimburse it for its fees and costs in defending the Wilkins Lawsuit and paying the settlement.  Zalinda Farms refused to pay or reimburse iLink, and iLink then filed the complaint in the instant action, alleging breach of contract, breach of express indemnity, and intentional misrepresentation.  Zalinda Farms answered the complaint, denying all allegations.

The matter proceeded to a bench trial.  After the close of evidence and closing statements (including a written rebuttal statement submitted by iLink), the trial court entered a decision after bench trial, rendering judgment in favor of Zalinda Farms.  The court found that the indemnity provision of the iLink Agreement was "confusing and ambiguous" and the claims from the Wilkins Lawsuit did not fall under the indemnity clause.  It also found that iLink did not prove elements of its misrepresentation claim.

8

The court subsequently entered judgment in favor of Zalinda Farms, which included an award of attorney fees and costs to Zalinda Farms in the amount of $20,250.

iLink timely appealed.

DISCUSSION

iLink raises three issues on appeal. First, it argues the trial court erred in finding the indemnity clause in the iLink Agreement did not apply to its defense and settlement of the Wilkins Lawsuit. Second, iLink contends it did not waive its right to seek indemnity from Zalinda Farms when it settled the Wilkins Lawsuit. Third, iLink asserts the award of attorney fees and costs in Zalinda Farms's favor must be reversed if this court determines the trial court erred.[1]

We address iLink's second argument only and determine that iLink waived its right to seek indemnity when it settled the Wilkins Lawsuit. As such, we do not address iLink's other arguments.

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810.) We review the interpretation of a contract de novo unless the interpretation turns on the credibility of extrinsic evidence. (*Morgan v. City of Los Angeles Bd. of Pension Comrs.* (2000) 85 Cal.App.4th 836, 843.)

---

[1] iLink also brought a claim against Victor for intentional misrepresentation. The court found that iLink did not prove the necessary elements of this claim. iLink has not challenged this finding.

9

For oral, as well as written, contracts, "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." (*Bank of the West v. Superior Court* (1992) 2 Ca1.4th 1254, 1264; Civ. Code, § 1636.) That mutual intent is determined by " 'objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.' " (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) "The question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)

" 'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party. If it is not, the case is over.' " (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.) Here, the parties dispute the meaning of the sentence: "And the parties waive all claims against each other." Zalinda Farms maintains the sentence means that all parties to the settlement agreement, including iLink and Korn, waived any claims they had against any other party to the settlement agreement. As such, Zalinda Farms asserts iLink waived its indemnity claim against Zalinda Farms when it settled the Wilkins Lawsuit and agreed to the term that "the parties waive all claims against each other."

10

iLink disagrees, arguing: (1) the parties only intended to resolve the dispute between Wilkins on one hand and iLink and Zalinda Farms on the other; (2) at no point during the litigation of the Wilkins Lawsuit did iLink assert any claim against Zalinda Farms; (3) iLink and Zalinda Farms had previously agreed to preserve iLink's right to bring a claim for indemnity against Zalinda Farms; and (4) as a matter of law, under the facts in the record, iLink could not have waived its contractual indemnity claim. We reject these contentions.

iLink asserts the parties to the settlement agreement only intended to resolve the claims alleged by Wilkins against iLink and Zalinda Farms. Thus, iLink maintains that the release only applied to Wilkins's claim. However, the plain language of the release does not support iLink's interpretation. Just based on the words the parties agreed to on the record, the waiver does not appear limited only to the claims made by Wilkins. If that was the parties' intention, they easily could have limited it accordingly. The actual language does not support this interpretation. Instead, the waiver language was much more expansive and applied to all the parties and their claims against each other. Accordingly, the meaning of the waiver provision of the settlement agreement is clear: Each party, including iLink and Korn, waived its or his claims against the other parties.

iLink next argues that even if the waiver of claims applied to them, it could not have waived its indemnity claim against Zalinda Farms because it had not asserted that claim, or any claim, against Zalinda Farms during the pendency of the Wilkins Lawsuit. Not so. iLink tendered its defense in the Wilkins Lawsuit to Zalinda Farms. After Zalinda Farms did not accept the tender, iLink retained its own counsel. iLink

11

subsequently threatened to file a cross-complaint for indemnity in the Wilkins Lawsuit against Zalinda Farms. The fact that it did not do so does not negate the existence of that claim. Therefore, although iLink did not file the cross-complaint, it cannot dispute that it was aware of its indemnity claim at the time it entered into the settlement of the Wilkins Lawsuit. When it did enter into that agreement, iLink agreed to language that waived its claims against all other parties. It did not limit the waiver only to claims stated in the complaint or cross-complaint in the Wilkins Lawsuit. As such, the waiver necessarily included the indemnity claim unless it was somehow carved out of the settlement.

iLink claims its indemnity claim was outside the settlement agreement because the parties agreed that Zalinda Farms would not oppose iLink filing a cross-complaint for indemnity at a later time. To support this position, iLink points to its counsel's letter to Zalinda Farms's counsel memorializing the agreement regarding the indemnity claim:

> "This is to confirm that Zalinda Farms, Inc. and Victor Zaleschuck [sic] have agreed that no opposition would be filed in the event a cross-complaint for indemnity on behalf of my clients is filed in the future. We are informed and believe there have been some informal settlement discussions between the plaintiff and your clients, however we understand that no agreement has been worked out between the parties."

We, as did the trial court, do not share iLink's expansive reading of the subject letter. At trial, the court found that Zalinda Farms had agreed that it would not oppose a request for leave to file a cross-complaint seeking indemnity. The court did not find that Zalinda Farms had agreed to indemnify iLink at a later time. We agree with the trial court's fair and accurate reading of what the letter actually states.

12

Nevertheless, iLink asserts that its delay in filing a cross-complaint was "done in contemplation of, and in order to facilitate, the settlement of the Wilkins Lawsuit.  As such, the agreement between Zalinda Farms and iLink specifically contemplated iLink bringing a cross-claim for indemnity after the Wilkins Lawsuit settled."  iLink's position, however, is undermined by the text of the subject letter and its actions at the hearing where the settlement agreement was put on the record.  The letter only speaks to the possibility of filing a cross-complaint at a later date.  It says nothing about filing an indemnity claim after the Wilkins Lawsuit settled.  Moreover, iLink never mentioned the indemnity claim when the settlement agreement was put on the record.  When the court stated that iLink would be dismissed with prejudice after its payment of $2,500, iLink said nothing about filing a cross-complaint for indemnity.  And it did not ask that its indemnity claim be exempted from the waiver of all claims by all parties.  In fact, iLink's attorney addressed the waiver issue with Korn, but there was no mention of the indemnity claim:

> "[iLink's counsel]:  And there will be no further claim that any of the parties will have against you --
>
> "THE COURT:  See, the problem, [iLink's counsel], is you're looking that way instead of this way, and so we can't hear you.
>
> "[iLink's counsel]:  -- against any of the other parties.  Do you understand that?
>
> "MR. KORN:  Yes."

Although the exchange between Korn and iLink's counsel is less than clear, the attorney's question does not appear to limit the claims being waived as only belonging to Wilkins.

Accordingly, we do not agree with iLink that there is any evidence in the record that iLink and Zalinda Farms agreed that iLink could and would file a complaint for indemnity after all parties settled the Wilkins Lawsuit.

Finally, citing *C.L. Peck Contractors v. Superior Court* (1984) 159 Cal.App.3d 828 (*Peck*), iLink maintains its contractual indemnity claim survived the settlement of the Wilkins Lawsuit. *Peck* is not instructive here.

In *Peck*, one of the defendants settled with the plaintiff. Under Code of Civil Procedure section 877.6, the settling defendant sought from the trial court a declaration that the settlement was in good faith, and a dismissal of all cross-claims for indemnification. The nonsettling defendants opposed dismissal of their cross-claim for indemnity to the extent that the claims were provided for by contract with the settling defendant. (*Peck*, *supra*, 159 Cal.3d at p. 831.) The Court of Appeal reversed the trial court's granting of the settling defendant's motion, reasoning that a good faith settlement does not relieve a settling tortfeasor of its obligations to a nonsettling defendant under the terms of an express indemnification agreement. (*Id.* at p. 834.)

Here, the facts stand in stark contrast to *Peck*. In *Peck*, the nonsettling defendants, who had existing cross-complaints for contractual indemnity, opposed the good faith settlement motion, arguing that their claims could not be extinguished by the settlement. Here, during the settlement of the Wilkins Lawsuit, iLink remained silent about its indemnity claim or desire to file a complaint for indemnity after the settlement. In addition, in *Peck*, the parties seeking the survival of their indemnity claims did not settle with the plaintiff. In comparison, iLink was a settling defendant and had every

14

opportunity to ensure that its indemnity claim was not included in the waiver agreed to by all parties on the record. It did not take advantage of this opportunity, and *Peck*, *supra*, 159 Cal.3d 828 is not the talisman to revive its waived claim.

In short, iLink agreed to a settlement agreement that contained a broad waiver provision: "the parties waive all claims against each other." The only reasonable interpretation of this provision is that the parties agreed to waive all known claims against each other. Such a waiver included iLink's indemnity claim against Zalinda Farms. We determine the wavier contained in the settlement agreement is not "reasonably susceptible" to iLink's suggested interpretation that it only applied to Wilkins's claims in the Wilkins Lawsuit or to claims stated in a complaint or cross-complaint in that action. (See *Oceanside 84, Ltd. v. Fidelity Federal Bank, supra,* 56 Cal.App.4th at p. 1448.) As such, iLink's claim for indemnity is barred by the settlement agreement.

## DISPOSITION

The judgment is affirmed. Zalinda Farms and Victor Zaleschuk are awarded their costs on this appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.

15