Filed 6/26/15  Duffy v. City of L.A. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAMES DUFFY, | B252465 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC454369) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Appellant. | |

     APPEAL from a judgment of the Superior Court of Los Angeles Country, Ross M. Klein, Judge.  Affirmed.

     Michael N. Feuer, City Attorney, Vivienne A. Swanigan, Assistant City Attorney, and Jennifer M. Handzlik, Deputy City Attorney, for Defendant and Appellant.

     Shegerian & Associates, Inc., Carney R. Shegerian, and Jill P. McDonnell, for Plaintiff and Respondent.

_____

Appellant City of Los Angeles (City) appeals from a judgment after a jury trial verdict in favor of respondent James Duffy. City challenges the trial court's denial of its motion for summary judgment, admission of certain hearsay statements and the deposition testimony of Duffy's dying wife, and sufficiency of the evidence to support the jury verdict.

City also filed a notice of appeal challenging the trial court's order granting Duffy's motion for attorney fees. That appeal was consolidated with this matter. City has raised no argument on the issue of attorney fees in its briefing. It also has presented no argument challenging the amount or basis for the $3,255,000 in damages awarded by the jury. As City has not argued these issues, we do not consider them. Finding no prejudicial error with regard to the issues City does argue, we affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

James Duffy began his employment with City in 1991 as a part-time gardener caretaker. He was promoted to a full-time employee in 1995 and remained a city employee until he retired in March 2010. Duffy did not experience problems with his supervisors for the first 10 years of his employment with City.

From November 2001 to August 2006, Abel Perez, who is Mexican American, was Duffy's supervisor. Duffy, who is Caucasian, claims that he faced discrimination, harassment, and retaliation from Perez based on race and a disability which developed following his 2004 workplace injury, even after Perez was transferred to another assignment in 2006.

Duffy and Perez had a poor working relationship from the beginning. Perez allegedly called Duffy derogatory names and when asked why he treated Duffy poorly, Perez replied, "I hate white people." Perez also assigned Duffy to parks that required more maintenance without assistance. Duffy complained about the harassment he was receiving from Perez to Tony Ruiz, a lead senior gardener who reported to Perez. Ruiz spoke with Perez regarding the possibility of assigning someone to assist Duffy, to which Perez stated, "No, don't do nothing for him. He is nothing but trouble." Perez gave Duffy an oral counseling in 2002 for failing to timely clean restrooms, and, in an

evaluation report in 2003, he stated Duffy needed to improve his job performance.

In 2004, Duffy suffered a workplace injury, causing trauma to his brain. His injuries were compounded by a previous head injury he suffered in 1979. This resulted in Duffy's slow speech, tendency to repeat himself, and development of cognitive issues resulting in difficulty in thinking.

In October 2004, Duffy's tools were missing from his assigned park. Although Duffy did not personally see Perez take the tools, he saw Perez and another supervisor driving around Duffy's assigned park on the day of the incident. Two homeless men in the park later told Duffy they had seen Perez and the other supervisor take his tools. Ruiz investigated the incident and determined Perez had taken Duffy's tools. When Ruiz confronted Perez regarding the incident, Perez "just laughed." Duffy was not formally accused or disciplined for the incident.

Between December 2004 and January 2005, Duffy received two additional oral counselings from Perez. Duffy filed a grievance against Perez in response, alleging that Perez had used "abusive language" and accused Duffy of trying to get Perez into trouble with his supervisor. Ken Novak, Perez's supervisor at the time, notified Perez that he was using inappropriate measures to discipline Duffy.

In August 2006, Perez was transferred to another district. The parties dispute whether Perez maintained indirect supervision over Duffy. According to Duffy, Perez maintained control over Duffy's assignments, placed him in "harsher" work assignments, and did not allow Duffy to receive help from coworkers assigned to nearby parks. In 2008, Duffy attended a meeting for part-time workers at which he was the only Caucasian present. Perez was present at the meeting. Perez spoke to the group, recounting his past as a gang member and stating his hatred for "all white people." From mid-2008 until Duffy's retirement, Perez allegedly drove by Duffy's assigned parks several times a week during which he honked his horn at Duffy and called him derogatory names. Duffy reported that, on two occasions, Perez threatened him with physical harm. Perez repeatedly made references to Duffy's race and disability during the incidents, and threatened to kill him if he reported Perez to his superiors and made

3

him lose his job. Duffy received several additional oral counselings and negative feedback regarding his job performance, which he believed were given at Perez's direction.

In March 2010, Duffy decided to participate in an Early Retirement Incentive Program (ERIP) offered by City. In exchange for signing a severance agreement, in which he agreed to release City from all claims arising from his participation in ERIP, he was given a $15,000 cash separation payment and an enhanced lifetime monthly retirement allowance.

On February 3, 2011, Duffy filed a suit against City alleging discrimination, harassment, and retaliation based upon his race and disability. City moved for summary judgment based upon the language of the severance agreement, arguing Duffy's suit was barred as a matter of law. The trial court denied the motion. City also filed motions in limine to exclude certain statements made by Perez to Duffy, presented through the testimonies of Mary Duffy Peterson, Duffy's sister, and Mrs. Jan Duffy, his wife, as well as the videotaped deposition of Mrs. Duffy. The motions were denied. City renewed these objections during trial, and they were overruled. The jury returned a special verdict which unanimously found in favor of Duffy and awarded him $3,255,000.[1]

This timely appeal followed.

## DISCUSSION

### I

City argues the trial court erred in denying its motion for summary judgment. It contends summary judgment was appropriate because the ERIP severance agreement barred Duffy's claims as a matter of law.

"[A]s a general proposition, . . . an order denying a motion for summary judgment,

---

[1]  The jury awarded $74,000 for past economic loss, $306,000 for future economic loss, $2,375,000 for past noneconomic loss, and $500,000 for future noneconomic loss. Duffy's economic losses were reduced by the monetary benefits he received from his participation in the ERIP. As we have noted, City raises no argument about the amount of damages or the basis for them.

4

while not directly appealable, may be reviewed on appeal from the final judgment. [Citations.]" (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 836.)  The appellant, however, must "show the purported error constituted prejudicial, or reversible, error (i.e., caused a miscarriage of justice).  [Citation.]" (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343.)  City has not addressed the issue of prejudice in its opening brief, and "[o]rdinarily, contentions not raised in appellant's opening brief are deemed waived.  [Citation.]" (*Baugh v. Garl* (2006) 137 Cal.App.4th 737, 746.)

Nevertheless, to the extent the trial court's denial of summary judgment involved issues of law, it is subject to de novo review.  (*Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1270.)  An independent review of the record reveals that the trial court correctly denied City's motion for summary judgment.

"'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party.  If it is not, the case is over.  [Citation.]'" (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.)  "In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties.  [Citations.]  We interpret this language to mean just what it says." (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684.)

City sought summary judgment based on the language of the severance agreement Duffy signed for early retirement benefits.  The "Voluntary Separation" provision of the severance agreement states, "In exchange for certain compensation described in paragraph 2 below, I agree to retire from my employment with the City."  The "ERIP Release and Waiver" provision of the agreement states, in part, "I freely, voluntarily, completely and permanently release the city, its governing bodies, and all officials, employees, agents and any others acting for it (collectively, 'Releasees'), from all claims *resulting from my participation in the ERIP*, including all federal, state, local, administrative, civil service, collective bargaining, and other claims.  [¶]  I agree not to bring any grievance, arbitration, lawsuit or other proceeding against Releasees for claims

5

*resulting in any way from the City's offering and my accepting the ERIP Agreement* and hereby waive any right to contest those claims in any forum." (Italics added.)

The language of the ERIP agreement is unambiguous—Duffy waived his right to seek those claims *resulting from* his participation in the ERIP, but only those claims. Contrary to City's contention that this was a "general release" with a "broad scope," the contractual language severely limited the range of claims being waived to those specifically resulting from participation in the ERIP. This means that, for City to prevail on summary judgment, it had to show Duffy's claims of harassment, discrimination, and retaliation on the bases of disability and race resulted from his participation in the program. The record shows that it failed to do so because City did not differentiate between Duffy's constructive discharge, which was an "'involuntary resignation,'" (*Smith v. Brown-Forman Distillers Corp.* (1987) 196 Cal.App.3d 503, 513), and the *means* by which he chose to retire—the ERIP—which was a voluntary choice. It is clear from the record that Duffy's claims are not a result of his voluntary participation in the ERIP, but rather the hostile environment created by Perez that led to his constructive discharge.

City also asserts that the ERIP contains a Civil Code section 1542 waiver[2] that "barr[ed] any claims based on conduct occurring before its effective date." This is true for general releases that bar *any and all* future claims without restriction. (See *Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1156-1157 [involving a general release in which both parties "release[d] each other from all claims 'which they ever had, may now have or may hereafter have'"].) But the "ERIP Release and Waiver" provision in this case narrowed the waived claims to those "resulting from . . . participation in the ERIP" and, as we have decided, Duffy's claims of harassment, discrimination, and retaliation did not fall under the severance agreement or

---

[2]     Civil Code section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

the Civil Code section 1542 waiver. City contends that, according to *Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 589 (*Villacres*), any claims that are intended to be excluded from the severance agreement must be explicitly identified. *Villacres* does not support this contention, as the opinion merely noted the settlement agreement in that case "recognized limited exception[s] for additional litigation," and the plaintiff's suit "was not among them." (*Ibid.*) Finally, we note the pertinent language limiting the waived claims was drafted by City, and to the extent any ambiguity arises from the interpretation of this language, it is resolved against the drafter. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 738.) Thus, City's argument that it was entitled to summary judgment based on the language of the ERIP release provision is not well taken.

II

City also argues the trial court erroneously allowed the jury to hear "inadmissible hearsay testimony" from Duffy's wife and his sister, Peterson, and the videotaped deposition of Duffy's wife, now deceased, in which she appeared wearing a hospital gown. We address the merits of each argument in turn.

A trial court's evidentiary rulings are reviewed for abuse of discretion. (*McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 670.) "An evidentiary ruling, even if erroneous, is not reversible absent a miscarriage of justice. [Citations.]" (*Easterby v. Clark* (2009) 171 Cal.App.4th 772, 783.) "'[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Ibid.*; Code Civ. Proc., § 475.)

A. *Testimony of Peterson and Mrs. Duffy*

Peterson testified regarding the statements Perez had made to Duffy. Duffy had complained to Peterson that Perez made comments such as, "You are the dumbest white man I know," and "I could kill you and nobody would know it." In her videotaped deposition, Mrs. Duffy testified to similar statements. The videotape was shown to the jury because Mrs. Duffy had died by the time of trial. In it she stated Duffy told her

Perez had called him a "stupid asshole" and threatened to kill him. City moved to exclude these statements through motions in limine based on its argument that the statements were double hearsay. The trial court disagreed, finding that the statements were admitted to show "the operative words . . . had an effect on Mr. Duffy, not for the truth."

City argues that Perez's statements to Duffy were inadmissible hearsay because they were offered for their truth, "i.e., that Perez had in fact called [Duffy] derogatory names." This is an incorrect characterization of the hearsay rule. Hearsay is defined as "a statement that was made other than by a witness while testifying at the hearing and *that is offered to prove the truth of the matter asserted*." (Evid. Code, § 1200, italics added.) It follows that a statement offered for a purpose other than to prove the truth of the matter asserted is not hearsay. (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 316.) Perez's statements to Duffy were not offered to prove that Duffy was the "dumbest white man" that Perez knew, or that Perez "could kill [Duffy] and nobody would know it." They were offered to prove that those statements were indeed made by Perez. (See *Balling v. Finch* (1962) 203 Cal.App.2d 413, 420-421 ["These statements were admissible for the purpose of showing that they were made by [plaintiff]—not for the purpose of establishing the truth of any matter that may be asserted therein. There is therefore no hearsay problem involved."].)

City also argues that Duffy's statements to Peterson and Mrs. Duffy were also inadmissible hearsay. We disagree. Peterson's and Mrs. Duffy's testimony recounting Duffy's statements was offered to illustrate the emotional distress Duffy suffered as a result of being threatened and insulted by Perez. It was not admitted for the purpose of proving that Duffy had actually made the statements. Because the statements were admissible for a limited purpose, City was entitled to request a limiting instruction under Evidence Code section 355.[3] City did not do so, and therefore the issue is forfeited.

---

[3] Evidence Code section 355 provides, "When evidence is admissible as to one party or for one purpose and is inadmissible as to another party or for another purpose,

8

(*Dincau v. Tamayose* (1982) 131 Cal.App.3d 780, 791 [party challenging admission of hearsay statements waived issue by failing to request limiting instructions during trial].)

Further, we find no resulting miscarriage of justice. City suffered no prejudice through the admission of Mrs. Duffy's and Peterson's testimony because their testimony was "merely cumulative or corroborative of other evidence properly in the record." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 430, p. 485; see *Rue-Ell Enterprises, Inc. v. City of Berkeley* (1983) 147 Cal.App.3d 81, 91 [trial court's admission of hearsay writings not prejudicial because they were cumulative to other properly admitted evidence].) All of Perez's alleged statements to Duffy were admitted through the testimony of Dr. Craig Snyder, who performed a forensic evaluation on Duffy. Duffy also testified to the statements Perez had made to him. There has been no showing of prejudice or a miscarriage of justice suffered by City through the admission of Peterson's and Mrs. Duffy's testimonies about Perez's statements to Duffy.

B.    *Mrs. Duffy's Videotaped Deposition*

Mrs. Duffy had died by the time of trial. Duffy sought to show Mrs. Duffy's videotaped deposition testimony at trial. City objected under Evidence Code sections 350 and 352, arguing the video's minimal probative value was substantially outweighed by its highly prejudicial impact because Mrs. Duffy was wearing a hospital gown.[4]

After viewing a portion of the video, the trial court stated that, "candidly, I expected Mrs. Duffy to be covered in tubes or wires, and she is not. At least it is not to such an extent that one would be taken aback or shocked by looking at her." The court

_____

the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly."

[4]    City also argues that Duffy's attorneys compounded the prejudice caused by the video by repeatedly referring to Mrs. Duffy's death during the trial and replaying a portion of the video during closing argument. City, however, did not object to references to Mrs. Duffy's death or to the replaying of her testimony during closing argument. Thus, this argument is deemed waived. (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 749 [defendant's failure to object to plaintiff's testimony in trial court as irrelevant, unduly prejudicial, and speculative resulted in waiver of its right to raise the issue on appeal].)

9

further commented, "The whole screen, though, leaves out I.V.'s in the arm, which is fine because my concern is inflaming passions and prejudice and sympathy of the jury, and that took it out of contention, out of an issue." Counsel for City remarked that Duffy's attorneys had "nicely cropped out the I.V.'s." Finally, the trial court "encourage[d]" City to propose a limiting instruction advising the jury not to consider the fact that Mrs. Duffy was wearing a hospital gown when reaching its decision. The record does not indicate that City requested such an instruction.

Based on the record before us, we do not find the trial court abused its discretion in allowing the video to be played for the jury. "[I]n making an Evidence Code section 352 ruling, the trial court need neither recite each factor it considered, nor detail the evidence supporting each factor. Instead, the record need only reflect that the court weighed the relevant factors. [Citation.]" (*Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1140.) The trial court watched the video, was satisfied that the video would not "inflame[e] [the] passions and prejudice and sympathy" of the jury, and invited counsel for City to submit a limiting instruction. The record sufficiently reflects that the trial court weighed the relevant factors. No abuse of discretion is shown in the admission of Mrs. Duffy's videotaped testimony.

### III

Finally, City argues the jury's verdict on Duffy's retaliation claim was not supported by substantial evidence. Even if that were so, City's argument is moot.

In *Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1343, the trial court found defendants liable for sexual harassment, retaliation, and wrongful termination and awarded an undifferentiated sum of $60,000 in damages. One of the defendants challenged only the wrongful termination claim, without an explanation as to how this alleged error was prejudicial. (*Id.* at p. 1352.) Judgment was affirmed because the defendant "ma[de] no effort to argue he would have been responsible for a lesser amount had the court not found him liable on the wrongful termination cause of action." (*Ibid.*)

Similarly, the jury awarded Duffy an undifferentiated sum of $3,255,000 for all

10

five causes of action, of which retaliation was but one; City makes no argument that it would have been responsible for a lesser amount had the jury rejected Duffy's retaliation cause of action. Because City does not challenge the sufficiency of the evidence as to Duffy's other causes of action, its argument does not impact the amount of the judgment awarded by the jury. (See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 368.) Thus, reversal is not warranted on this ground.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.

11