[Nos. G042741, G042990. Fourth Dist., Div. Three. Nov. 24, 2010.]

DOVER VILLAGE ASSOCIATION, Plaintiff and Appellant, v.
PATRICK E. JENNISON et al., Defendants and Respondents.

**COUNSEL**

Feldsott & Lee, Martin L. Lee and Erika M. Hsu for Plaintiff and Appellant.

Michael Maguire & Associates, Paul Kevin Wood and Brian Y. Fujita for Defendants and Respondents.

**OPINION**

**RYLAARSDAM, Acting P. J.**—Patrick E. Jennison had a leaky sewer pipe two feet beneath the concrete slab underlying his Newport Beach condo. The homeowners association said he was responsible for the repair bill on the theory that the sewer pipe was "exclusive use common area" for which he was responsible. On cross-motions for summary judgment, the trial court disagreed, and entered a judgment declaring that the association should bear the expense of the repair cost. The court later awarded Jennison about $17,000 in attorney fees and court costs. The association has appealed from the ensuing judgment.

We affirm. Under a natural reading of the CC&R's (covenants, conditions and restrictions), the sewer pipe was a genuine common area to be maintained and repaired by the association, as distinct from "an exclusive use common area appurtenant" to an individual owner's separate interest.

FACTS

A. *Brief Overview*

The Dover Village Association (Association) is a 38-unit condominium complex in Newport Beach. For some time before the summer of 2007, a deteriorated four-inch cast iron sewage pipe beneath Patrick Jennison's condo had been venting sewage. Finally, in late July 2007 the leak seeped up into

the floors and carpet of Jennison's unit and the unit of another. Jennison's tenant reported the leak to the Association's president, who called property management, who then sent a plumber to make repairs.

The repairs were extensive, costing about $15,000. It was necessary to cut through Jennison's floor, jack hammer the concrete slab underneath, and trench out and replace the 50 feet or so of sewer pipe that connected Jennison's condo with the main service line. A dispute soon arose as to who was responsible. In October the Association sent Jennison a letter asserting that because the sewer pipe exclusively serviced Jennison's condo, it was his responsibility "to maintain and repair" the sewer pipe. The letter directed Jennison to pay the $15,000 plus repair cost. Jennison did not send a check. The Association filed this action.

The parties agreed to have the issue decided on cross-motions for summary judgment. The trial court ruled that, as a matter of law under both the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act), codified as section 1350 et seq. of the Civil Code, and the CC&R's, the sewer pipe is common area to be maintained and repaired by the Association. (All statutory references will be to the Civil Code.)

## B. *Governing Texts*

This case involves the interaction between the two sets of texts. First, the Davis-Stirling Act set forth in section 1350 et seq. provides general rules for the governance of condominium associations. Second, there are the particular rules set forth the Association's own CC&R's. We examine each in turn.

### 1. *The Act*

The way the Davis-Stirling Act is structured, a homeowners association is normally responsible for repairs to "common areas," but the individual unit owner is responsible for repairs to "any exclusive use common area appurtenant to the separate interest." Section 1364, subdivision (a) provides both the general rule and the exception for exclusive use common areas: "(a) Unless otherwise provided in the declaration of a common interest development, the association is responsible for repairing, replacing, or maintaining the common areas, other than exclusive use common areas, and the

owner of each separate interest is responsible for maintaining that separate interest and any exclusive use common area appurtenant to the separate interest."

The definitions section of the Davis-Stirling Act is set out in section 1351. Subdivision (i) defines "exclusive use common area." The definition is: " 'Exclusive use common area' means a portion of the common areas designated by the declaration for the exclusive use of one or more, but fewer than all, of the owners of the separate interests and which is or will be appurtenant to the separate interest or interests. (1) *Unless the declaration otherwise provides*, any shutters, awnings, window boxes, doorsteps, stoops, porches, balconies, patios, exterior doors, doorframes, and hardware incident thereto, screens and windows or *other fixtures designed to serve a single separate interest*, but located outside the boundaries of the separate interest, are exclusive use common areas allocated exclusively to that separate interest." (Italics added.)

## 2. *The CC&R's*

There is no question under the CC&R's that sewer pipes are not within any individual owner's separate interest. Article I, section 6 of the CC&R's for Dover Village says: "The following are not a part of the Unit: roofs, foundations, below finished pad elevation, *pipes*, ducts, flues, chutes, conduits, wires and *other utility installations* wherever located, except the portions thereof located within the physical boundaries of the Unit." (Italics added.) The question is whether a given pipe that can be said to exclusively service a unit is a "exclusive use common area appurtenant" for purposes of section 1364.

Two exclusive use common areas are expressly mentioned in the CC&R's: Patio and garage areas. Article XIX expressly designates patio and garage areas for the exclusive use and enjoyment of a single unit: Unit owners "shall . . . be entitled to *the exclusive use and possession* of the patio area and garage area designated for the use of said unit. . . . It shall be the duty of the unit owner . . . *to maintain* the interior of said patio and garage."

Finally, the CC&R's give the Association power to make repairs and structural alterations to particular units, and then assess the costs to the individual owner. Article V is generally devoted to the Association board's powers. Section 5 of article V, subdivision (*l*), provides that the board shall

have power "To acquire and pay for any other materials, supplies, furniture, labor, services, maintenance, repairs, *structural alterations*, insurance, taxes or assessments which the Board is required to secure or pay for pursuant to the terms of these restrictions or by law, or which in its opinion *shall be necessary or proper for the operation of the common area* or for the enforcement of these restrictions, provided that if any such materials, supplies, furniture, labor, services, maintenance, repairs, structural alterations, insurance, taxes or assessments *are provided for particular units*, the costs thereof shall be specifically addressed to the owners of such units." (Italics added.)

## DISCUSSION

As shown above, under the Association's bylaws, garage and patio areas are expressly classified as "exclusive use common areas appurtenant." Such a conclusion, of course, makes sense: Ordinary condominium buyers might expect a secure place to park and exclusive use of the patio immediately adjacent to their units. The question is whether sewer lines also come within the same category.

Under the rule of *"expressio unius est exclusio alterius"*—say one thing and impliedly exclude the other—the most natural reading of the CC&R's is that sewer lines are not "exclusive use common areas appurtenant." By expressly saying patio and garage areas come within the category, the CC&R's impliedly say that sewer lines do not. (Cf. *People v. Palacios* (2007) 41 Cal.4th 720, 732 [62 Cal.Rptr.3d 145, 161 P.3d 519] [as applied to statutory construction, *expressio unius maxim* means that " ' "if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary" ' "].)

The Association asserts two counterarguments, one based on language in the CC&R's and the other on language in the Davis-Stirling Act.

### A. *The Structural Alteration Clause*

The argument from the CC&R's is based on article V's structural alteration clause. The Association reasons that because unit owners can be individually charged for structural alterations, they can similarly be charged for sewer pipes outside their units.

The argument fails because it is circular; that is, it proves nothing. If one begins with the premise that sewer pipes servicing a particular unit *already* fall into the category of "exclusive use common area appurtenant," then one can say that repairs to such pipes are indeed "for particular units." But one

must *first* establish that a sewer pipe is such an "exclusive use common area appurtenant," and, as we have seen, the only explicit mention of such exclusive use areas in the CC&R's are the patio and garage areas.

## B. *The Fixture Statute*

■ The argument based on the Davis-Stirling Act is rooted in section 1351, subdivision (i)'s inclusion of fixtures as "exclusive use common areas." This argument fails for two reasons. First and most fundamentally, interconnected *sewer* pipes cannot really be said to be the "fixtures" of any particular unit. A sewer system is a series of interconnected pipes which ultimately feed into one common line. Differentiating parts of that interconnected system is unreasonable. The portion of piping coming from one unit is no more affixed to that unit than it is to the sewer system and other pipes or piping within that system.

■ In this regard, another fancy Latin phrase, *ejusdem generis*, operates. (See *In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 48 [111 Cal.Rptr.3d 313] [" 'the general term or category is "restricted to those things that are similar to those which are enumerated specifically" ' "].) Under the canon of *ejusdem generis*, one determines whether a given thing comes within a more general category—here, "other fixtures designed to serve a single separate interest"—by comparing it to other things specifically mentioned in that category.

In section 1351, subdivision (i), here are the things specifically mentioned as being exclusive use common areas: "shutters, awnings, window boxes, doorsteps, stoops, porches, balconies, patios, exterior doors, doorframes, and hardware incident thereto, screens and windows."

Some pipes—for example, drain pipes exclusively servicing one unit and not connected to any other system of piping—might indeed come within the category, because they can be said to be, like shutters and window boxes, "designed to serve a single separate interest." But a piece of a system of interconnected sewer piping does not fit: It is, literally, physically connected to every other piece of the system. Every unit's sewer pipes are a "fixture" of every other unit's sewer pipes.

The second reason the argument fails is the clause in section 1351, subdivision (i) that allows for a different result if the CC&R's so provide. As shown above, the most natural reading of these CC&R's is that sewer pipes, as distinct from patios and garages, are not contemplated as exclusive use common areas.

C. *Confirmation in Other Sections of the CC&R's*

Our conclusion, that the portion of piping connecting Jennison's condo with the sewer system is not an exclusive use common area, is confirmed by language in article VIII of the CC&R's that indicate that common areas— including exclusive use common areas—are areas to which owners generally have access. Section 2 of article VIII precludes individual owners from any "obstruction of the common area without prior consent of the Board." Section 6 of article VIII precludes any "noxious or offensive activity" in any common area. And significantly, section 7 provides: "Nothing shall be altered or constructed in or removed from the common area, except upon the written consent of the Board." Such language is perfectly consistent with normal patio and garage use. It is not consistent with the idea that individual unit owners somehow control the sewer lines beyond the boundaries of their unit.

D. *The Argument from Deference*

Finally, the Association makes what we might call a "deference argument," i.e., it asserts that its determination of whether a portion of sewer line was exclusive use common area is a matter committed to its discretion, to which the courts should accord it deference. The argument fails because it confuses a legal issue governed by statutory and contract text with matters that genuinely do lend themselves to board discretion.

The case primarily relied on by the Association for its discretion argument is, in fact, a nice illustration of matters genuinely within a board's discretion. In *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249 [87 Cal.Rptr.2d 237, 980 P.2d 940], a unit owner disputed the homeowners association's preferred *method* of treating termite infestation. The owner, supported by inspection reports, wanted fumigation. The board decided on "spot-treatment." (*Id.* at pp. 253–254.) The board's decision was ultimately upheld by the Supreme Court because it was a matter "entrusted" to the board's "discretion." (*Id.* at p. 265.)

There is an obvious difference between a legal issue over who precisely has the responsibility for a sewer line and how a board should go about making a repair that is clearly within its responsibility. But we know of no provision in the Davis-Stirling Act or the CC&R's that makes the Association or its board the ultimate judge of legal issues affecting the development.

## CONCLUSION

Because our decision today is solely a matter of the applicable texts, we need not deal with issues raised by the Association as to issues of parol evidence or estoppel. By the same token, there are no issues involving the

reasonableness of the attorney fee and cost award assuming a judgment in Jennison's favor. The judgment and fee and cost awards are affirmed. Respondent Jennison shall recover his appellate fees and costs.

Moore, J., and Fybel, J., concurred.