Filed 11/4/15  Pflugh v. 2-4-6-8-10-12 Steiner Street and 490-492-494-496 Duboce Ave. etc. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WILLIAM PFLUGH et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>2-4-6-8-10-12 STEINER STREET AND 490-492-494-496 DUBOCE AVENUE CONDOMINIUM HOMEOWNERS ASSOCIATION et al.,<br><br>    Defendants and Respondents. | A141771 & A142827<br><br>(San Francisco County<br>Super. Ct. No. CGC-12-5217967) |

This case arises out of a dispute between the homeowners association of a 10-unit condominium complex and four owners or co-owners of three units in that complex. Plaintiffs William Pflugh, Luis Guzman, Aaron Binkley and Mark Culbert appeal from the trial court's judgment in favor of defendants 2-4-6-8-10-12 Steiner Street and 490-492-494-496 Duboce Avenue Condominium Homeowners Association (HOA), John McLay, Janna Chow, Debi Gunders, Steven Gunders, Brad Frazier, and Diana Foster. The court found the HOA did not violate the HOA's declaration of conditions, covenants and restrictions (CC&R's) when it authorized the creation of an exclusive use common area to provide parking for two units from what had formerly been classified as a general use common area.  We affirm the judgment.  Plaintiffs also purport to appeal from the court's order awarding attorney fees and costs.  However, we lack jurisdiction to consider that appeal because the notice of appeal as to that order was untimely filed.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## I. *Factual Background*

Plaintiffs collectively own three of the 10 condominium units in the Don MacDonald Duboce-Steiner Condominium Development (Development) located at 2-4-6-8-10-12 Steiner Street and 490-492-494-496 Duboce Avenue. McLay is the president of the HOA. Two of the units, 10 Steiner Street (Unit 10) and 12 Steiner Street (Unit 12), face the interior of the complex. These units are owned by Frazier and Debi Gunders, respectively. The front doors of Units 10 and 12 are not accessible from the street, but are only accessible from a private driveway off Steiner Street that runs through the interior of the Development. We will refer to the paved area in front of these two units as the Steiner Common Area.

On April 8, 1988, the Development recorded a set of CC&R's (the Original CC&R's). In addition to a dwelling unit, each owner was granted a percentage interest in the common area, ranging from 7.05 percent to 11.87 percent. Immediately below a table listing each percentage, section 2.2(b) of the Original CC&R's states, in part: "The ownership of each condominium shall include a unit and such undivided interest in the Common Area. The *common interest* appurtenant to each Unit is declared to be *permanent in character* and cannot be altered without the consent of *all Owners* affected and the first mortgages of such Owners, as expressed in an amended declaration." (Italics added.)

## II. *Events Preceding Litigation*

In 2007, Debi Gunders advertised Unit 12 for rent, indicating that the unit included two parking spaces. At the annual homeowners meeting that followed, Pflugh argued that the Original CC&R's did not allow parking in the Steiner Common Area. He threatened to sue the HOA if it agreed to allow the occupants of Unit 10 and Unit 12 to use the area for parking.

On August 6, 2008, the HOA sent a letter to all the Development's owners notifying them that parking within the Steiner Common Area was not permitted. Owners

2

adversely affected by this policy were invited to raise their concerns at the next homeowners meeting.

Effective December 1, 2009, Debi Gunders and Frazier entered into a license agreement with the HOA for the right to park in the Steiner Common Area. The agreement provided that each would pay $1,500 per year for the right to use a parking space. At the 2009 annual HOA meeting, McLay submitted a long-term proposal for parking. The parking issue came up again at the February 9, 2011 annual HOA meeting in connection with HOA's decision to update and rewrite the Original CC&R's.

On May 27, 2011, McLay circulated proposed amendments to the Original CC&R's by email. The amendments were intended to be viewed by all the homeowners; however, Guzman was not included as an email recipient. Reportedly, Binkley's copy of the amendments were sent to an email address he rarely used, and Culbert's copy went to his junk email folder. Subsequently, McLay received responses from seven of the Development's owners indicating that they approved the amendments. Approval from six or seven lenders was also obtained.

On December 30, 2011, the Development recorded a Restated Declaration of Restrictions and Amendment to Condominium Plan (the Restated CC&R's). The Restated CC&R's were intended to replace the Original CC&R's in their entirety. As part of the revision, the new CC&R's modified a provision for "restricted" common areas, giving them the new designation of "exclusive use" common areas. Additionally, for the first time portions of the Steiner Common Area were designated as exclusive use common areas. Along with authorizing a parking space each for Unit 10 and Unit 12, the new designation provided for utility meter access and for a recycling area.

On December 31, 2011, Gunders and Frazier entered into an agreement to pay $4,000 each to the HOA in exchange for their exclusive use of the Steiner Common Area parking spaces. As part of their agreement, they approved the Restated CC&R's.

On November 8, 2012, the HOA recorded the Second Restated CC&R's. This version of the CC&R's was adopted after secret ballots showed the owners of seven of

the units had voted for approval.[1]  It retains the Restated CC&R's exclusive use designations for the Steiner Common Area.  No lender approvals were obtained in connection with this second revision.

## III.  Procedural History

### A.  The Operative Complaint

On July 10, 2013, plaintiffs filed the operative second amended complaint.  The second amended complaint contains causes of action for (1) breach of the CC&R's, (2) slander of title, (3) trespass, (4) breach of fiduciary duty, (5) gross negligence, (6) ejectment, (7) constructive fraud, (8) declaratory relief, (9) injunctive relief, (10) unjust enrichment, (11) quiet title, and (12) accounting.

### B.  The Trial

The first phase of a bifurcated trial was held on December 4, 5, and 18, 2013, as a bench trial.  The trial court focused on the issue of whether the HOA had violated the Original CC&R's by creating the exclusive use common areas without a unanimous vote.  The parties stipulated that neither of the two restated CC&R's changed any owner's percentage of ownership in the common area.

At trial, McLay testified that he first moved to the Development in 1996.  At that time, the Steiner Common Area was being used for parking for Unit 10 and Unit 12.  The driveway is the only way for the units' residents to access their homes.  There is a curb cut from the street to the driveway area which is separated from the public sidewalk by a gate.[2]  The narrowest section of the driveway contains two concrete runners to guide the wheels of cars entering the area.  The area was used for parking because the garages attached to these units had previously been converted to living space.  According to McLay, under the Second Restated CC&R's, all Development residents are allowed to

---

[1] The Restated CC&R's were recirculated after the HOA discovered voting by email was not authorized.

[2] The trial court made a site visit and concluded there is a curb cut over the sidewalk that connects to the driveway.

enter the driveway area at any time to look at their utility meters or to use the recycling area.

Culbert testified that he had lived at 8 Steiner Street from 2005 to 2009. He observed cars were parked in the driveway area about 30 percent of the time. The area had also been used for barbeques, and residents had placed patio chairs and tables in the space.

McLay was not aware of any concerns about parking until Pflugh raised his objections at the 2007 annual homeowners meeting. At the following 2008 meeting, there was a consensus among the owners that they would explore rewriting the CC&R's to provide for parking for Unit 10 and Unit 12. The HOA eventually retained a law firm to rewrite the CC&R's, including adding provisions for parking.

### C. The Trial Court's Statement of Decision

On March 10, 2014, the trial court issued its statement of decision and rendered judgment in favor of defendants. The court also ruled that defendants, as the prevailing parties, were entitled to recover their attorney fees and costs.

In its statement of decision, the trial court held defendants had not violated section 2.2(b) of the Original CC&R's: "The court finds that creating exclusive use common area over common area is not a change in character of common area requiring the consent of all owners affected and the first mortgages of each owner was not required to change common area to exclusive use common area. The court further finds that a vote of two thirds of the owners was sufficient to change common area to exclusive use common area as was accomplished by the Restated [CC&R's] and the Second Restated [CC&R's]." The court concluded that neither the Restated CC&R's nor the Second Restated CC&R's changed the percentage of ownership in the common area, noting this fact was stipulated to by the parties.

The trial court also found the parking spaces for Units 10 and 12 were part of the Development's original plan, and that this use would be incompatible with any kind of permanent recreational use by the other owners. The court further found plaintiffs were not entitled to any compensation for the creation of the exclusive use common area,

5

citing Civil Code section 4600, subdivision (a).[3] Based on this finding, the court ruled against plaintiffs on all their remaining causes of action. Plaintiffs filed a timely notice of appeal from the judgment.

## DISCUSSION

### I. *Standard of Review*

When a lower court decision involves an interpretation of CC&R's based on undisputed facts, the appellate court reviews the judgment de novo. (*Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1121.) To the extent the issues raised in this appeal involve the court's resolution of disputed facts or inferences, we apply the substantial evidence standard of review. (*Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 43.)

When a ruling is challenged on appeal for lack of substantial evidence, our power begins and ends with a determination of whether there is any substantial evidence, contradicted or uncontradicted, to support the trial court's findings. (*Thompson v. Tracor Flight Systems, Inc*. (2001) 86 Cal.App.4th 1156, 1166.) We must view the evidence in the light most favorable to the prevailing parties, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*Ibid.*) When two or more inferences can reasonably be deduced from the facts, a reviewing court cannot substitute its deductions for those of the trial court. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.)

### II. *The Trial Court's Ruling Is Correct*

#### A. *Issue on Appeal*

Although the issue is not well-framed by plaintiffs, this case involves the interaction between the two sets of texts. First, the Davis-Stirling Common Interest

---

[3] Civil Code section 4600, subdivision (a) provides, in part: "Unless the governing documents specify a different percentage, the affirmative vote of members owning at least 67 percent of the separate interests in the common interest development shall be required before the board may grant exclusive use of any portion of the common area to a member."

Development Act (the Davis-Stirling Act), which is set forth in Civil Code section 4000 et seq. (formerly section 1350 et seq.) and provides general rules for the governance of condominium associations.[4]  Second, there are the particular rules set forth in the Development's CC&R's.  We examine each in turn.

The Davis-Stirling Act was adopted in 1985 and became operative January 1, 1986.  (Stats. 1985, ch. 874, § 14, pp. 2774–2786.)  It "consolidated the statutory law governing condominiums and other common interest developments."  (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81.)  The Davis-Stirling Act defines "exclusive use common area," in pertinent part, as "a portion of the common areas designated by the declaration for the exclusive use of one or more, but fewer than all, of the owners of the separate interests and which is or will be appurtenant to the separate interest or interests."  (Civ. Code, § 4145.)  Under the Davis-Stirling Act, *"[u]nless the governing documents specify a different percentage,* the affirmative vote of members owning *at least 67 percent of the separate interests* in the common interest development shall be required before the board may grant exclusive use of any portion of the common area to a member."  (Civ. Code, § 4600, subd. (a), italics added.)

The principal issue on appeal is whether the HOA violated the Original CC&R's by designating the parking spaces for Units 10 and 12 as exclusive use areas in the restated CC&R's by the two-thirds voting margin set forth in Civil Code section 4600, subdivision (a), instead of by the unanimous vote required by Section 2.2(b) of the Original CC&R's.  In plaintiffs' view, the HOA breached the Original CC&R's by altering ownership rights to the common area without obtaining the unanimous consent of all mortgagees and owners.  They focus on the following sentence from section 2.2(b), which we set forth again: "The *common interest* appurtenant to each Unit is declared to be permanent in character and cannot be altered without the consent of all Owners affected and the first mortgages of such Owners, as expressed in an amended

---

[4] The Davis-Stirling Act was repealed and reenacted operative January 1, 2014 in Civil Code section 4000 et seq.  (Stats. 2012, ch. 180, §§ 1, 2, pp. 2844–2907.)

declaration." As noted above, section 1.7 defines "common interest" as "the proportionate undivided interest in the common area which is appurtenant to each unit as set forth in this declaration." Section 1.5 defines "common area" to mean "those portions of the property, to which title is held by all owners in common, and excepting the individual condominium units."[5]

Plaintiffs conceded at trial that the percentages of ownership interests in the common area were not altered by the restated CC&R's. They argue that the creation of the exclusive use areas for parking for Unit 10 and Unit 12 constituted a qualitative change to the "permanent character" of the common interest in the common area, an alteration that could only be made by unanimous vote under section 2.2(b). Defendants contend that section 2.2(b), by its terms, applies to changes in the percentage of ownership interest in the common area held by each owner, and does not apply to the creation of exclusive use areas. Because plaintiffs stipulated that ownership of the common area has never changed, defendants assert the stipulation defeats their argument.

### B. *Contract Interpretation*

As with all contracts, "the mutual intention of the parties at the time the contract is formed governs interpretation."[6] (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821.) The parties' intent is inferred from the " 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage [citation] . . . .' Thus, if

---

[5] Additionally, section 8.6(d) of the Original CC&R's provides, in part: "Unless two-thirds (2/3) of the first mortagees of condominiums and two-thirds (2/3) of the Owners . . . have given their prior written approval, neither the [HOA] nor the Owners shall be entitled [¶] . . . [¶] (iv) [b]y act or omission to seek to abandon, partition, subdivide, encumber, sell or transfer the Common Area." Plaintiffs cite to this section, but do not explain how they believe changing the disputed area from a general use common area to an exclusive use common area triggers this provision.

[6] We note the parties here had no involvement in the drafting of the Original CC&R's, which were drafted by the owners who established the condominium.

the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning."[7] (*Id.* at p. 822.)

Defendants' position is that section 2.2(b)'s requirement of a unanimous vote before altering the common area is limited to changes made to the percentages of ownership interests. Hence, Civil Code section 4600, subdivision (a)'s two-thirds voting margin governs the creation of exclusive use common areas. Plaintiffs assert this position is "unreasonable and must fail" because the "proscription in Section 2.2 is purely qualitative in nature, given the use of the phrase 'permanent in character.' " We agree with defendants.

As noted above, the parties stipulated that neither the Restated Declaration nor the Second Restated Declaration changed the percentage of ownership in the common area. Thus, the "common interest appurtenant to each unit" was not altered by the revised CC&R's. "Common interest" is defined as the "proportionate undivided interest in the common area which is appurtenant to each unit *as set forth in this Declaration*." (Original CC&R's § 1.7, italics added.) The Original CC&R's "set forth" the "proportionate undivided interest in the common area" in the table located within section 2.2(b), which reflects the percentages of interest owned by each unit's owner. Because changes to the "common interest" are the only changes requiring a unanimous vote, plaintiffs' argument fails.

In claiming that section 2.2(b) applies to more than just the percentage of ownership, plaintiffs read too much in the phrase "permanent in character," asserting it acts to prohibit *any* change to the joint use of the common area without a unanimous vote. However, the phrase "permanent in character" modifies the preceding clause, which is the "*common interest* appurtenant to each unit." (Italics added.) The phrase does not reference the common area, nor does it refer to the joint use of the common area.

---

[7] As plaintiff acknowledges, the parties agreed the language in the Original CC&R's is clear and unambiguous on its face.

Even if the language is susceptible to the construction urged by plaintiffs, historic practice would require us to find in favor of defendants.  If both parties to a contract offer reasonable interpretations of a disputed provision, "we must look to other objective manifestations of the parties' intent.  In instances such as this, where there is no evidence that the parties specifically agreed, or even discussed, [the contract term at issue], the conduct of the parties after the execution of the contract, and before any controversy arose, may be considered in order to attempt to ascertain the parties' intention.  [Citation.]  'It is well settled that although an agreement may be indefinite or uncertain in its inception, the subsequent performance of the parties will be considered in determining its meaning for they are least likely to be mistaken as to the intent.  [Citations.]' " (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1449.)

Under the Original CC&R's section 2.2(c), only 490 Duboce (Unit 490) was granted the "restricted use" of common area for a parking space.  The other restricted use areas were the yard areas assigned to each unit.  Plaintiffs argue that the Original CC&R's would have assigned a similar restricted use designation to the Steiner Common Area parking spaces if such use had been intended.  Based on this omission, plaintiffs assert this omission is "overwhelmingly persuasive if not conclusive evidence that the Steiner Common Area was not intended to be a parking area."

There was, however, substantial evidence to support the conclusion that the new exclusive use designation did not alter the "permanent character" of the Steiner Common Area.  There was evidence that the space had long been used for parking by the occupants of Units 10 and 12, notwithstanding the lack of an explicit designation in the Original CC&R's.  Importantly, the evidence is undisputed that the front doors of Units 10 and 12 open into the Steiner Common Area, and that persons seeking to access the units must enter through the driveway's gate.  These two units are the only units in the Development that have front doors opening directly into the common area.  That the driveway had been used by motor vehicles in the past is clear, as the pathway had concrete runners and had historically offered the only access to the unit's garages before they were converted to

10

living spaces.[8]  While Culbert testified that he had personally observed other uses of the Steiner Common Area, substantial evidence supports the trial court's finding that parking for Units 10 and 12 was part of the original plan of development and that such use would be inconsistent with any other permanent uses of that space.  (See, e.g., *Dover Village Assn. v. Jennison* (2010) 191 Cal.App.4th 123, 128 ["Ordinary condominium buyers might expect a secure place to park . . . ."].)  In sum, plaintiffs fail to show section 2.2(b) of the Original CC&R's applies to the HOA's vote to grant an exclusive use common area for parking for Units 10 and 12.

### III.    *Defendants' Appeal of the Attorney Fees and Costs Order is Untimely*

Defendants contend plaintiffs' appeal from the trial court's order granting their attorney fees motions is untimely and should be dismissed.  We agree.

A postjudgment order awarding or denying attorney fees is separately appealable. (Code Civ. Proc., § 904.1, subd. (a)(2); *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.)  A timely appeal is essential to appellate jurisdiction.  (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696–698 [judgment final where it resolves all issues except for any compliance with its terms]; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; Code of Civ. Proc., § 904.1, subds. (a)(1), (2).)  If the appeal is untimely, this court has no jurisdiction to consider it, and it must be dismissed.  (Cal. Rules of Court, rule 8.104(b).)[9]

---

[8] Plaintiffs assert "the entrance to the Steiner Common Area did not originally have its own curb cut, and had to be later modified.  Prior to that, anyone planning to drive into the Steiner Common Area was required to use the 8 Steiner curb cut and angle their way into the Steiner Common Area.  Therefore, at a later time, the 8 Steiner curb cut was modified."  This statement is unsupported by any citation to the record on appeal.  "If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived."  (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see also *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)

[9] Further references to Rules are to the California Rules of Court.

A notice of appeal must be filed on or before *the earliest of* (1) 60 days after the superior court clerk serves the notice of entry of judgment *or* a file-stamped copy of the judgment, *showing the date either was served,* (2) 60 days after the date of service of the notice of entry of judgment or a file-stamped copy of the judgment, or (3) 180 days after the date of entry of the judgment. (Rule 8.104(a).)

On June 12, 2014, the trial court filed its order awarding $97,677 in attorney fees and costs to the HOA, McLay, Debi Gunders, and Chow. The order also awarded $39,500 in attorney fees and costs to defendants Frazier and Steve Gunders. That same day, the superior court clerk mailed a copy of the file-stamped order with a proof of service to plaintiffs' counsel, Wallace C. Doolittle. The clerk also mailed a copy to Bradley D. Bayan, who reportedly appeared on behalf of Doolittle at the hearing on attorney fees.

On August 12, 2014, plaintiffs filed their notice of appeal from the order awarding attorney fees. This was 61 days after the superior court clerk's June 12, 2014 service, which means the notice of appeal was filed one day late.

Plaintiffs assert the time for filing an appeal did not commence until June 30, 2014, when defendants Steve Gunders and Frazier filed a notice of entry of order. Plaintiffs erroneously claim the clerk originally served the attorney fee order on Bayan only, failing to serve Doolittle, who is their attorney of record. This assertion is based on an incomplete reading of the clerk's transcript. In making this argument, they cite to the copy of the trial court's order that was served on Bayan (which is attached to the June 30, 2014 notice of entry), ignoring the fact that the clerk's transcript also contains a file-stamped copy of the order showing it was also mailed to Doolittle at his place of business on June 12, 2014. Any reliance on the June 30, 2014 notice of entry to extend the filing deadline is unavailing as Rule 8.104 explicitly provides that the earliest service of notice of an appealable order is used to calculate the deadline for filing a notice of appeal.[10]

_____

[10] Plaintiffs do not argue that we should broadly construe their timely notice of appeal from the underlying judgment as encompassing the attorney fees award.

Plaintiffs also observe the document served by the superior court clerk was not entitled "notice of entry," as provided by rule 8.104(a)(1). However, as noted above, the rule states that the clerk may serve the notice of entry of judgment "*or* a file-stamped copy of the judgment, showing the date either was served." (Italics added.) Here, the clerk served a file-stamped copy of the attorney fee order with an attached proof of service.[11] Thus, plaintiffs' notice of appeal from this order is untimely. Because we lack jurisdiction, the appeal in case No. A142827 is dismissed.

## DISPOSITION

The judgment is affirmed in appeal No. 141771. Appeal No. A142827 from the June 12, 2014 trial court's order on defendants' motions for attorney fees is dismissed. Defendants are awarded costs on appeal.

---

[11] Rule 8.104(e) provides that "[a]s used in (a) and (d), 'judgment' includes an appealable order if the appeal is from an appealable order."

13

_____
DONDERO, J.

We concur:


_____
HUMES, P.J.


_____
MARGULIES, J.

14