Filed 9/25/23  Koehler v. Prinz CA3

## <u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROBERT F. KOEHLER, JR., | C095229 |
| Plaintiff, Cross-defendant and Appellant, | (Super. Ct. No. 34-2019-00269261-CU-MC-GDS) |
| v. | |
| DREW PRINZ et al., | |
| Defendants, Cross-complainants and Appellants. | |

This dispute arises out of attorney Robert F. Koehler, Jr.'s, (Koehler's) representation of Drew and Elizabeth Prinz (collectively, the Prinzes) in prior litigation involving the Campus Commons Homeowners Association (the HOA) and its property manager.  As a result of that litigation, the Prinzes received a compensatory damages settlement of $305,000, a portion of which ($109,374) was paid to Koehler as a

1

contingency fee. The Prinzes also were awarded approximately $412,000 in attorney fees and costs as the prevailing parties on a cross-complaint filed by the HOA.

The parties subsequently disagreed as to whom, between attorney and client, the attorney fee award on the cross-complaint belonged. To resolve their disagreement, Koehler filed this action for declaratory relief against the Prinzes, and the Prinzes cross-complained for damages and other relief against Koehler. After a bench trial, the trial court partially granted judgment in favor of Koehler on his declaratory relief cause of action, concluding that the fee award belonged to Koehler to the extent it exceeded the amount already paid to Koehler as a contingency fee. However, because Koehler improperly took and retained the entire fee award, the court entered judgment in favor of the Prinzes on their causes of action for financial elder abuse, conversion, breach of fiduciary duty, and negligence.

Both Koehler and the Prinzes appeal the judgment, raising a variety of arguments. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The complaint, cross-complaint, and fee agreements*

In 2013, when Elizabeth Prinz (Elizabeth) was 73 years old, she retained attorney Koehler to represent her in a lawsuit stemming from water damage to her house in the Campus Commons East Ranch development (Campus Commons). In July of that year, Koehler filed a complaint on her behalf against the HOA and its property manager in Sacramento County Superior Court (case No. 34-2013-00147479-CU-PO-GDS) (the "Campus Commons Lawsuit").

Koehler represented Elizabeth for approximately two years without any written fee agreement until, in July 2015, Elizabeth signed a contingency fee agreement. The signed fee agreement provides, in relevant part:

"<u>LEGAL SERVICES TO BE PROVIDED</u>:  Attorneys shall represent Client(s) in a claim, court action or arbitration proceeding more commonly entitled 'Prinz v. Campus

2

Commons East Homeowners Assoc.'[] The claim of Client(s) shall include, but not be limited to, a complaint against defendant(s) for damages for personal injury and property loss as may be allowed under the law. This Agreement does not include any services for appeals and Attorneys are not obligated to provide services on appeal. Any such services on appeal shall be subject to a separately negotiated agreement.

"RESPONSIBILITIES OF ATTORNEYS AND CLIENTS: Attorneys will prosecute the claim and any legal action filed in 'Prinz v. Campus Commons East Homeowners Assoc.'[] Attorneys shall keep Client(s) informed of progress and developments. Client(s) will be cooperative with Attorneys, keep Attorneys reasonably informed of all developments that come to the attention of Client(s), and cooperate in all proceedings and hearings.

"ATTORNEYS' FEES: Attorneys shall [be] paid monthly the sum of $250.00 as a retainer until the conclusion of the Client(s)' claim or action. Upon conclusion of the Client(s)' matter, Client(s) shall receive a credit of all retainer monthly sums paid as against any attorney fees earned by Attorneys. Attorneys shall receive 33.3% of any settlement or arbitration or pre-judgment award in favor of Client(s). The 33.3% will be paid to the Attorneys after any advanced costs have been returned by whomever advanced the costs. In the event it is necessary to prepare the case for trial and/or the case is settled within 21 days of the initial trial date, or proceeds to trial, the Attorneys' fee shall be 40% of any settlement or judgment in favor of Client(s).

"COSTS: Costs that are advanced will first be returned to whomever advanced the costs prior to a division of any settlement or arbitration award. . . ."

Sometime in late 2015, Elizabeth's son, Drew, joined the Campus Commons Lawsuit as an additional party plaintiff. In February 2016, Drew signed a contingency fee agreement with Koehler that was nearly identical to the one signed by Elizabeth, except as to the amount of the retainer fee.

3

In November 2016, the HOA and its property manager filed cross-complaints against the Prinzes (and each other). The HOA's cross-complaint alleged, in part, that the HOA was entitled under its covenants, conditions, and restrictions (CC&R's) to indemnification for any damages recovered by the Prinzes.

B.     *Settlement of the Campus Commons Lawsuit*

In March 2018, just before trial, the Prinzes settled their claims. Collectively, the HOA and property manager agreed to pay $305,000 to the Prinzes. From this, Koehler received a total of $109,374 as his contractual contingency fee.

The settlement agreements excluded the HOA's cross-complaint against the Prinzes, the trial on which was scheduled to begin on March 26, 2018. However, on March 23, 2018, the HOA filed a request for dismissal of its cross-complaint, which, after some delay, took effect on May 10, 2018.

C.     *The attorney fee award*

In July 2018, Koehler filed a motion for an award of attorney fees and costs under the CC&R's and Civil Code section 5975, subdivision (c) for successfully defending against the HOA's cross-complaint.[1] The motion sought an award of more than $666,000 for fees incurred by Koehler after the date the HOA's cross-complaint was filed. In support of the motion, Koehler submitted a declaration stating that the fees should not be apportioned between the Prinzes' complaint and the HOA's cross-complaint because the work was "intertwined and interdependent."

---

[1]     Undesignated statutory references are to the Civil Code.

The CC&R's provide that in any action alleging a breach or default of the documents, the court "may award" fees and costs to "any party . . . as it may deem just and reasonable." Section 5975, subdivision (c) provides that "[i]n an action to enforce [CC&R's], the prevailing party shall be awarded reasonable attorney's fees and costs."

4

The trial court granted the motion and ultimately entered a "judgment" awarding $377,280 in fees (plus $14,139.55 in costs) to the Prinzes as the "prevailing parties" on the HOA's cross-complaint (the Fee Award). The trial court denied the HOA's request for apportionment, agreeing with Koehler that the fees incurred to prosecute the complaint and the fees incurred to defend the cross-complaint were "inextricably intertwined."

In August 2019, Koehler received a check from the HOA for $412,075.94 (the amount of the Fee Award plus postjudgment interest). The same day, Koehler deposited the funds into his client trust account and filed an acknowledgement of satisfaction of judgment. Days later, Koehler withdrew the funds and used them to pay the mortgages on his personal residence and his taxes. Koehler neither notified the Prinzes that he received the check nor obtained their permission to withdraw the money from his client trust account.

When the Prinzes learned that Koehler had taken the funds, they objected. According to the Prinzes, Koehler had represented that any fee award would be shared with them. Koehler responded that the entire Fee Award belonged to him.

D.    *The dispute over the Fee Award*

In November 2019, Koehler filed this action against the Prinzes. Koehler's second amended complaint seeks a judicial declaration that (1) the funds obtained in settlement of the Prinzes' complaint were properly distributed; (2) the fee agreements do not apply to fees incurred to defend against the HOA's cross-complaint; (3) the attorney fees awarded for defending against the HOA's cross-complaint belong exclusively to Koehler.

The Prinzes filed a cross-complaint against Koehler. They allege that Koehler improperly (1) withdrew funds from his client trust account without the Prinzes' notice or consent; (2) withheld costs owed to the Prinzes under the settlement of the Campus Commons Lawsuit; and (3) misappropriated the fees awarded to the Prinzes as part of the

5

Fee Award.[2]  Their first amended cross-complaint includes claims against Koehler for financial elder abuse (Elizabeth only), conversion, breach of fiduciary duty, negligence, breach of contract, constructive trust, and injunctive relief.

A bench trial was held on January 25 and 26, 2021.  Four witnesses testified: Koehler, Elizabeth, Drew, and the Prinzes' expert witness, James Banks (Banks).

Koehler testified that there was no contemplation of the HOA's cross-complaint at the time the fee agreements were executed and therefore his work defending against the cross-complaint was beyond the scope of those agreements.  Koehler admitted that he previously told the Prinzes they would get a "credit adjustment" upon final resolution of the attorney fee issue.  He testified that was his "thinking at that time."  Later, he came to believe the entire fee award belonged to him.  Koehler testified that it was unnecessary for him to notify the Prinzes before withdrawing the funds from his client trust account because the funds belonged to him.

Elizabeth testified to her understanding that a fee award meant more money in the "pot" and that the parties would discuss how to distribute it.  She believed that any fee award would be placed in the trust account and could not be withdrawn from the account without her knowledge and consent.

Drew testified that Koehler told him the fees incurred in defending against the HOA's cross-complaint would be covered by the fee agreements.  Drew believed any fee award would be allocated based upon the percentages in the fee agreements or that, at minimum, the Prinzes would be reimbursed for the contingency fee already paid.

---

[2]     The Prinzes' amended cross-complaint also alleged that Koehler misappropriated the cost portion of the Fee Award.  However, in September 2020, Koehler sent the Prinzes a check for $16,614, representing the cost portion of the Fee Award ($14,139.55), plus interest.  Accordingly, the Prinzes did not include the cost portion of the Fee Award in their claim for damages at trial.

6

Banks testified that Koehler violated legal and ethical rules by, among other things, (1) failing to disclose his contingency fee agreements when seeking the Fee Award; (2) failing to maintain adequate records of his client trust account activities; (3) failing to notify the Prinzes when he received the Fee Award, withdrawing funds from his client trust account without their consent, and failing to return those funds when he learned there was a dispute; and (4) failing to inform the Prinzes he had a conflict of interest with respect to the funds.

After trial, the trial court issued a tentative decision, finding that Koehler was entitled to partial judgment in his favor on his declaratory relief cause of action. The court rejected the Prinzes' claim that the fee agreements governed allocation of the Fee Award. It found that Koehler is the beneficial owner of the Fee Award to the extent it exceeds the amount paid to Koehler as a contingency fee. Thus, the court denied the Prinzes' claim for breach of contract.

On the other hand, the court found Koehler liable to the Prinzes on their causes of action for financial elder abuse (as to Elizabeth only), conversion, breach of fiduciary duty, and professional negligence. The court awarded damages to the Prinzes in the amount of $109,374, equal to what was paid to Koehler as a contingency fee. The court denied the Prinzes' requests for forfeiture, punitive damages, a constructive trust, and injunctive relief.

The parties filed objections and proposals regarding the court's tentative decision. The court ruled on the objections/proposals and issued a final statement of decision, affirming its tentative decision with minor modifications.

Based on the court's finding that Koehler committed financial elder abuse, Elizabeth requested an award of fees and costs under Welfare and Institutions Code section 15657.5, subdivision (a). The trial court granted the motion, awarding Elizabeth $160,970.63 in fees and $6,454.21 in costs.

7

On October 21, 2021, the court entered an amended judgment, which included the award of compensatory damages, attorney fees, costs, and prejudgment interest to the Prinzes. Both Koehler and the Prinzes timely appealed the judgment.

DISCUSSION

On appeal, the Prinzes contend the court erred by finding that the parties did not intend the contingency fee agreements to govern allocation of the Fee Award. The Prinzes ask us to reverse the partial judgment in favor of Koehler on his declaratory relief cause of action, reverse the denial of their breach of contract cause of action, and recalculate the Prinzes' damages in an amount equal to 60 percent of the Fee Award. The Prinzes also ask us to reverse the court's judgment denying imposition of a constructive trust on Koehler's residence.

Koehler, in contrast, urges us to affirm the finding that the fee agreements do not apply, but to reverse the judgment in favor of the Prinzes on their causes of action for financial elder abuse, conversion, breach of fiduciary duty, and negligence.

I

*Standard of Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo, and we review the trial court's findings of fact for substantial evidence. 'Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' [Citation.]" (*Durante v. County of Santa Clara* (2018) 29 Cal.App.5th 839, 842.)

II

*The Parties' Fee Agreements*

We begin by addressing the dispute over the interpretation of the fee agreements. In its statement of decision, the trial court determined that the parties did not intend the

8

fee agreements to cover Koehler's defense of the HOA's cross-complaint. The Prinzes argue that the court erred by finding the fee agreements do not cover Koehler's defense of the HOA's cross-complaint. They contend that the language of the agreements, and undisputed extrinsic evidence, establish that the fee agreements control the disposition of the statutory Fee Award. Koehler responds that the trial court properly found the fee agreements apply only to the Prinzes' affirmative claims against the HOA. Koehler has the better argument, as we explain.

The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties at the time of contracting. (§ 1636.) To determine that intent, we look first to the language of the agreement. (§ 1639.) The words of a contract are to be understood in their ordinary and popular sense, rather than according to any strict legal meaning, unless the parties used the words in a technical sense or gave them a special meaning by usage. (§ 1644.) We consider the contract as a whole and strive to give effect to every part, if possible, with each clause helping to interpret the other. (§ 1641.)

When the language of a contract is clear and unambiguous, it will be followed. (§ 1638; *Gilkyson v. Disney Enterprises, Inc*. (2021) 66 Cal.App.5th 900, 916.) Conversely, when the language is susceptible of more than one reasonable interpretation, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining the true intent of the parties. (*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1236.)

"On appeal, we apply a de novo standard of review when construing the contract, including where conflicting inferences may be drawn from undisputed extrinsic evidence, 'unless the interpretation turns upon the credibility of extrinsic evidence.' [Citations.] Put simply, ' "when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract." ' [Citation.] To the extent there is conflicting extrinsic evidence requiring credibility determinations by the finder of fact regarding a meaning of which the contract is reasonably susceptible, we will uphold the

9

trial court's determination if supported by substantial evidence. [Citations.]" (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 531-532; *Medical Operations Management, Inc. v. National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891-892.)[3]

When a dispute arises over the meaning of a contract, the first question to be decided is whether the language is reasonably susceptible of different interpretations. (*Hartzheim v. Valley Land & Cattle Co*. (2007) 153 Cal.App.4th 383, 389.) The determination of whether an ambiguity exists is a question of law. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.)

In this case, the language of the fee agreements is reasonably susceptible to different interpretations. On one hand, the scope of legal representation is broadly defined in the agreements to include the entire "court action." As the Prinzes argue, this could imply that Koehler's representation of the Prinzes was intended to include defense of any cross-complaints filed within that action.

On the other hand, the fee agreements define Koehler's "responsibilities" more narrowly: "Attorneys will *prosecute* the claim and any legal action filed in 'Prinz v. Campus Commons East Homeowners Assoc.' " (Italics added.) As the trial court observed, the term "prosecute" connotes the commencement and continuation of a legal action against another, and is commonly contrasted with the word "defend," which means "to deny or oppose the right of a plaintiff in regard to (a suit or a wrong charged)." (Merriam-Webster Dict. Online <https://www.merriam-webster.com/dictionary/defend> [as of Sept. 25, 2023], archived at <https://perma.cc/8YYP-MHNX>.) Further, the

---

**3**  To the extent the Prinzes contend the trial court erred by failing to consider extrinsic evidence offered at trial, the contention fails for lack of proof. Absent a contrary showing in the record, we presume the trial court complied with its duties to review the evidence and interpret the agreements. (*In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 619.) The Prinzes make no such showing here.

agreements specifically refer to the Prinzes' complaint against the HOA but say nothing about defending a cross-complaint. Taken together, this language suggests the parties intended the agreements to cover only the prosecution of the Prinzes' claims, and nothing more.

If this were the end of our analysis, we would be hesitant to draw any definitive conclusions from the text of the agreements. But we find further support for Koehler's interpretation in the "ATTORNEYS' FEES" section of the agreements. It provides that Koehler shall receive 33.3 percent of "any settlement or arbitration or pre-judgment award," or 40 percent of any "settlement or judgment," depending on the stage at which the settlement or judgment is reached. Conspicuously absent from this provision is any reference to *post*judgment awards. This is significant because the default rule in California is that, absent a contrary agreement, postjudgment awards of attorney fees belong to the attorney, not the client. (See Discussion, *post*.) Thus, if the parties had intended postjudgment attorney fee awards to be covered by the agreements, we would expect such awards to be referenced expressly in the fee provisions. That they were not strongly supports the view that the parties did not intend the division of proceeds to include a *postjudgment* award of attorney fees.[4]

Buttressing this conclusion, the fee agreements exclude costs from the amounts subject to division under the fee agreements. It is well established that an award of attorney fees is a component of costs, not damages. (Code Civ. Proc., § 1033.5, subd. (a)(10); *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1160; *Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1065-1066.) Thus, on the face

---

**4**      The fact that the postjudgment fee award in this case ultimately was incorporated into an amended judgment does not change its character as a postjudgment award of fees for purposes of the fee agreements.

11

of the agreements, we conclude the parties did not intend a postjudgment award of fees to be divided based on the percentages in the agreements.

We find additional support for our interpretation in the extrinsic evidence. "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (§ 1647.) Here, it is undisputed that the fee agreements were executed years *after* Elizabeth filed her complaint against the HOA.[5] At the time, there was nothing to suggest the filing of a cross-complaint was anticipated. It therefore is reasonable to infer that defense of a cross-complaint was not contemplated by the parties, and the testimony at trial supports this.

Even more compelling is the evidence of the parties' course of performance before any dispute arose as to the meaning of the agreements. Under the agreements, the Prinzes were required to pay monthly retainer fees "until the conclusion of the . . . claim or action." The record shows that the Prinzes paid these fees from July 2013 until February 2018. But the "action" did not conclude February 2018; it continued through at least March 2019. If the parties had intended the fee agreements to cover the entire "action," the Prinzes would have continued paying monthly retainer fees through 2019. That they did not supports our conclusion that the parties never intended a postjudgment award of fees to be covered by the agreements.[6] (See *Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 26 [courts give weight to conduct of parties *before* any controversy arose as to meaning of contract].)

---

[5] We do not mean to suggest the cross-complaint was untimely, only that it was filed well after the time when a cross-complaint typically would be filed. (See Code Civ. Proc., § 428.50, subd. (a).)

[6] We acknowledge Drew's testimony that Koehler said he would not charge a separate fee for defending against the HOA's cross-complaint, but this does not alter our conclusion.

In contrast, the extrinsic evidence cited by the Prinzes sheds little, if any, light on the meaning of the agreements. At most, it shows Koehler decided not to charge the Prinzes a separate fee for defending against the cross-complaint *after* the cross-complaint was filed and *after* Drew specifically inquired about defense costs. (See *California National Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 143 [differing interpretations of contract after it is executed is not the same as evidence of intent when negotiating or executing the contract]; see also *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956 [California follows objective theory of contracts, under which the parties' undisclosed intent or understanding of the contract is immaterial].)[7] The evidence falls far short of establishing an agreement that the Prinzes would receive 60 percent (or more) of any fee award.

The trial court did not err in concluding that the percentages specified in the fee agreements do not govern distribution of the Fee Award.[8]

---

[7] The Prinzes also rely on Business and Professions Code section 6147, subdivision (a)(3) and the general rule that a court should interpret the language of the contract against the party who caused the uncertainty. Neither contention has merit. As the trial court observed, a failure to comply with Business and Professions Code section 6147, subdivision (a)(3) simply means that the agreement is "voidable" at the option of the clients and the attorney is thereafter entitled to a reasonable fee. (Bus. & Prof. Code, § 6147, subd. (b).) The general rule to interpret the language of the contract against the party who caused the uncertainty applies only when the uncertainty is not removed by the other rules of construction. (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.)

[8] We agree with the Prinzes that in the absence of an enforceable agreement, Koehler was entitled only to a reasonable fee for his services, but we reject the Prinzes' contention that Koehler was required to defend the reasonableness of the Fee Award in this action. The propriety of the court's Fee Award in the Campus Commons Lawsuit is not at issue here.

13

III

*Ownership of the Fee Award*

We next consider who, between attorney and client, is the owner of a statutory fee award under section 5975 where, as here, there is no agreement addressing the issue.**9**

"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) Because the statutory language is generally the most reliable indicator of legislative intent, we begin with the statutory language, giving the words their usual and ordinary meaning, construed in the context of the statute as a whole and the overall statutory scheme. (*Ibid*.) If the words themselves are unambiguous, we presume the Legislature meant what it said, and the plain meaning governs. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) If, however, the statutory terms are ambiguous, we may refer to other indicia of intent, such as the ostensible objects to be achieved and the legislative history. (*Ibid*.) In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the general purpose of the statute and avoiding absurd results. (*Ibid*.)

Section 5975 is part of the Davis-Stirling Common Interest Development Act. (§ 4000.) In relevant part, section 5975 provides: "In an action to enforce the governing documents [of a common interest development], the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 5975, subd. (c).)

Construing similar language, our California Supreme Court held in *Flannery v. Prentice* (2001) 26 Cal.4th 572 (*Flannery*) that, absent an enforceable agreement to the

---

**9**     Although the trial court appears to have awarded Koehler fees under section 5975 and the CC&R's, the parties' briefs on appeal only discuss section 5975. We therefore limit our discussion to the section 5975 issue.

contrary, the proceeds of a statutory fee award "belong to the attorneys who labored to earn them." (*Id*. at p. 575.) In *Flannery*, after the plaintiff successfully sued her former employer for California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) violations, the trial court awarded over $1 million in attorney fees under Government Code section 12965, which authorized an award of reasonable attorney fees to the prevailing party in FEHA actions.[10] (*Flannery, supra*, at pp. 575-576, 577.) Plaintiff subsequently filed a separate action against her former counsel alleging that, despite their contingency fee agreement, she was entitled to the entire fee award. (*Id*. at p. 576.)

The trial court granted summary judgment for defendants, but the appellate court reversed, reasoning that, absent an enforceable agreement to the contrary, the statutory award of fees belonged to the attorney. (*Flannery, supra*, 26 Cal.4th at p. 577.) The California Supreme Court granted review to consider "to whom, as between attorney and client, attorney fees awarded under Government Code section 12965 . . . belong when no contractual agreement provides for their disposition." (*Flannery*, at p. 575, fn. omitted.)

Beginning with the text of the statute, the Supreme Court rejected the notion that an award to a "prevailing party" necessarily means the award belongs to the litigant, rather than the litigant's attorney. (*Flannery, supra*, 26 Cal.4th at p. 578.) The court noted that " '[t]he word "party" is reasonably susceptible to more than one interpretation' " because it is " 'commonly understood to refer to either the actual litigant or the litigant's attorney of record.' " (*Ibid*.)

---

**10**     At the time, Government Code former section 12965, subdivision (b) provided: "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees, except where the action is filed by a public agency or a public official, acting in an official capacity." (Stats. 2000, ch. 189, § 1.) Government Code current section 12965, subdivision (c)(6) continues to authorize the court to award fees to the prevailing party in FEHA actions. (Gov. Code, § 12965, subd. (c)(6).)

To resolve this ambiguity, the court turned to extrinsic evidence of legislative intent, including the purpose of the statute and policy concerns. (*Flannery, supra*, 26 Cal.4th at p. 579.) The court first explained that the purpose of a fee-shifting statute is to enable private parties to obtain legal assistance by providing assurance that attorneys will be compensated. (*Id*. at p. 583.) The court held that construing the statute to vest ownership of fee awards in counsel, rather than litigants, will further this purpose while conforming to the "ordinary" view that a fee award is intended to reimburse or indemnify a party for fees paid or incurred. (*Id*. at pp. 579, 583-584, 586.)

In addition, the court held that vesting ownership of fee awards in counsel will advance several important public policies. Specifically, it will (1) encourage representation of legitimate FEHA claimants and discourage nonmeritorious suits; (2) avoid an unjust windfall to the client; (3) ensure fairness to the litigants who must pay such fees; and (4) avoid ethical concerns related to the prohibition on fee splitting. (*Flannery, supra*, 26 Cal.4th at pp. 584-588.) Accordingly, the court held that, absent an enforceable agreement to the contrary, the proceeds of a FEHA fee award belong "to the attorneys who labored to earn them." (*Id*. at p. 590; accord, *Pulliam v. HNL Automotive Inc.* (2022) 13 Cal.5th 127, 138.)

Other California courts have since followed the reasoning of *Flannery* in concluding that, absent a contrary agreement, a statutory fee award belongs to the attorney. (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1508-1510 [law firm may intervene to file motion for attorney fees under Code of Civil Procedure section 1021.5 because fees would belong to the attorneys]; *Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1387-1388 [attorney fees awarded under Labor Code sections 226 and 1194 belong to the attorneys]; *Aerotek, Inc. v. Johnson Group Staffing Co., Inc.* (2020) 54 Cal.App.5th 670, 679-682 [attorney fees awarded under Uniform Trade Secrets Act (Civ. Code, § 3426.4) belong to the attorneys].)

16

The Prinzes assert that *Flannery* is distinguishable because it involves a discretionary fee award, whereas the Fee Award in this case was mandatory. We find this to be a distinction without a difference. We see no reason why a mandatory fee award should be treated any differently than a discretionary fee award when determining ownership. (*Henry M. Lee Law Corp. v. Superior Court, supra*, 204 Cal.App.4th at p. 1387 [applying *Flannery* to mandatory fee statutes].)

The reasoning of *Flannery* applies to section 5975. Thus, since there is no enforceable agreement to the contrary, we conclude the attorney fees awarded pursuant to section 5975 (exceeding fees already paid) belong to Koehler as the attorney who labored to earn them.

IV

*Offset/Reimbursement For Fees Already Paid*

Applying *Flannery*, the trial court concluded that while the Fee Award generally belongs to Koehler, he is required to offset/reimburse the $109,374 contingency fee that he received as his contractual share of the settlement. Koehler contends this was error and that he is entitled to the entire Fee Award. We disagree.

As discussed, *Flannery* and its progeny hold that, absent a contrary agreement, a statutory attorney fee award belongs to the attorneys who labored to earn them (*Flannery, supra*, 26 Cal.4th at p. 590), *but only* to the extent the award "exceed[s] fees the client already has paid." (*Id*. at p. 577.) Here, it is undisputed that Koehler was paid a contingency fee of $109,374 as his contractual share of the settlement amount. The question before us is whether the $109,374 qualifies as "fees already paid" under *Flannery*.

Koehler argues that the fees incurred to defend the HOA's cross-complaint are wholly separate from the fees incurred to prosecute the Prinzes' complaint. Because the Prinzes never paid him any fees specifically for defending against the HOA's cross-complaint, Koehler contends he should receive the entire Fee Award.

17

In our view, the relevant inquiry is not whether the parties *intended* the contingency fee to compensate Koehler for his defense work, but whether he was, in fact, compensated for his defense work. We conclude that he was. As Koehler argued to the court in the prior Campus Commons litigation, and as that court subsequently found, "there is no *substantive* point of demarcation between fees incurred to prosecute the complaint and fees incurred to defend the cross-complaint. They are inextricably intertwined." Koehler cannot now claim that there is no overlap between his work prosecuting the complaint and his work defending against the cross-complaint. (See *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 841-843 [discussing doctrine of judicial estoppel].) Therefore, to prevent Koehler from being paid twice for the same work, it is necessary to offset/reimburse the fees already paid.

Koehler argues that even if some offset/reimbursement is warranted, it should be limited to fees paid for services after November 28, 2016, the date the HOA's cross-complaint was filed.[11] Since the contingency fee encompasses services provided before that date, Koehler contends there was no basis for the trial court to treat the entire contingency fee amount ($109,374) as "fees already paid" for purposes of *Flannery*.

While Koehler's contention is not without some facial appeal, we nevertheless find it unpersuasive. Because the contingency fee depended on the outcome of the Prinzes' complaint, and because defeat of the HOA's cross-complaint was essential to their recovery on the complaint, we believe it was within the trial court's discretion to

---

[11]     Koehler did not request, and therefore was not awarded, fees for services incurred before the filing of the HOA's cross-complaint on November 28, 2016. Koehler contends that he chose the filing date as the demarcation point for his fee motion because any services performed before the HOA filed its cross-complaint "could not possibly be encompassed within the statutory fee award for defense services." We disagree, as the indemnity issue raised on the cross-complaint required Koehler to litigate who was responsible for the damage to Elizabeth's house, which also was relevant to the Prinzes' complaint against the HOA and its property manager.

treat the services underlying the contingency fee as "inextricably intertwined" with Koehler's services defending against the cross-complaint. (See *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 623-626 [a prevailing party is entitled to recover contractual attorney fees for time spent on noncontract claims necessary to the success of the contract claim]; *Stokus v. Marsh* (1990) 217 Cal.App.3d 647, 654-656 [approving award of fees incurred prior to filing of complaint]; *Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1370-1371 [same]; see also *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 401 [counsel not permitted to take contractual fees in addition to statutory fees].) Accordingly, we affirm the trial court's conclusion that Koehler was required to offset/reimburse the entire $109,374 contingency fee.

V

*Koehler's Liability for Financial Elder Abuse and Conversion*

Having concluded that Koehler wrongfully retained, or failed to reimburse, the $109,374 contingency fee, the trial court found Koehler liable to the Prinzes on their causes of action for financial elder abuse (Elizabeth only), conversion, breach of fiduciary duty, and professional negligence, awarding the Prinzes $109,374 in compensatory damages. Koehler argues the evidence was insufficient to support finding him liable for conversion and financial elder abuse.[12] We disagree.

A.     *Conversion*

" ' " 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or

---

**12**     Koehler does not contest the findings of liability for professional negligence and breach of fiduciary duty. We therefore deem those issues conceded and express no opinion on them.

19

disposition of property rights; and (3) damages.' " ' [Citation.]" (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.)

Koehler contends he cannot be held liable for conversion because there is no evidence that he knew or should have known he was wrongfully depriving the Prinzes of their money. His argument lacks merit. As our Supreme Court has held: "[C]onversion is a strict liability tort. It does not require bad faith, knowledge, or even negligence; it requires only that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1158.) Because conversion does not contain any element of wrongful motive or intent, it is immaterial whether Koehler knew or should have known that he committed a wrongful act.

Koehler also argues that money cannot be the subject of an action for conversion unless there is a specific, identifiable sum involved. (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 209.) The contention is correct, but unavailing. An action for the conversion of money does not require that a specific lump sum of money be entrusted to the defendant. (*Id.* at p. 216.) "[T]he plaintiff must merely prove a specific, identifiable sum of money . . . was taken from it." (*Ibid.*) Here, the evidence shows that Koehler improperly withdrew a specific, identifiable sum of money ($412,075.94) from his trust account, without his clients' knowledge or consent. Koehler then used the funds, including the part of the Fee Award that belonged to Elizabeth, to pay personal obligations. The Prinzes proved at trial a specific, identifiable sum of money that Koehler wrongfully took from them ($109,374). Thus, the trial court properly found Koehler liable for conversion.

B.      *Financial elder abuse*

The Legislature enacted the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.; the Act) to "protect elders by providing enhanced remedies to encourage private civil enforcement of laws against elder abuse

20

and neglect."[13]  (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 478.)  The Act protects against both physical and financial abuse.  (Welf. & Inst. Code, § 15610.07.)  "The financial abuse provisions are, in part, premised on the Legislature's belief that . . . financial agreements entered into by elders should be subject to special scrutiny.  [Citations.]"  (*Bounds, supra*, at p. 478.)

As relevant here, Welfare and Institutions Code section 15610.30 of the Act "defines financial abuse of an elder as occurring when a person or entity '[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder' for 'a wrongful use . . . .' "  (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 656.)  To establish a wrongful use, the elder must demonstrate a breach of the contract or other improper conduct.  (*Id*. at p. 657.)  Beyond this, section 15610.30, subdivision (b) imposes the additional requirement that " 'the person or entity knew or should have known that [the improper] conduct is likely to be harmful to the elder . . . adult.' "  (*Paslay, supra*, at p. 657, italics omitted; Welf. & Inst. Code, § 15160.30, subd. (b).)

Koehler argues that there is no evidence to support finding that he engaged in improper conduct, or that he knew or should have known his conduct was likely to be harmful to Elizabeth.  Koehler contends there was, at most, a "genuine fee dispute" and that he cannot be found liable for failing to anticipate the trial court's "unprecedented" interpretation of *Flannery*.

Where findings of fact are challenged on appeal, "[w]e must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment.  [Citations.]  We must accept as true all evidence and all reasonable inferences from that evidence tending

---

[13]  An elder is defined as "any person residing in this state, 65 years of age or older." (Welf. & Inst. Code, § 15610.27.)

21

to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment. It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trial court. Our authority begins and ends with a determination of whether, on the entire record, there is any 'substantial' evidence, contradicted or uncontradicted, which will support the judgment." (*Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 506-507.)

We conclude there is substantial evidence to support finding that Koehler wrongfully took/retained the entire Fee Award and that he knew or should have known at least part of that Fee Award belonged to Elizabeth. Although Koehler denied having knowledge of *Flannery* before this litigation was filed, it is reasonable to infer from the evidence that Koehler knew (or should have known) that Elizabeth was entitled to at least part of the Fee Award. In a December 20, 2018 e-mail to the Prinzes, Koehler wrote: "Upon further legal research, the attorney fees to be awarded by the court [for defending the East Ranch action filed against you in December 2017] belong to the attorney [if ever paid]. Upon receipt of those funds, an allocation will be made for the attorney fees earned and paid under the settlement agreement . . . . So I (hopefully) expect you will be reimbursed some of the fees paid under the present settlement agreement."[14] (Bracketed portions in original.) This came on the heels of a December 18, 2018 e-mail from Koehler's office stating, "[I]f the Judge awards attorney's fees and if/when the funds are received, you will be credited back any fees paid to Mr. Koehler from the settlement."

Likewise, because Koehler promptly spent the funds on his mortgages and taxes, it is reasonable to infer that Koehler knew or should have known Elizabeth was likely to be harmed by his wrongful conduct in taking/retaining the entire Fee Award. Thus, the

---

[14] It was not until September 2019, after Koehler withdrew the Fee Award from his client trust account, that Koehler asserted the Prinzes were not entitled to any part of the Fee Award.

22

evidence was sufficient to support the trial court's finding that Koehler committed financial elder abuse by misappropriating funds belonging to Elizabeth.

VI

*The Prinzes' Request for a Constructive Trust*

Because Koehler used the misappropriated funds to pay his mortgages, the Prinzes argue the trial court erred in denying their request to impose a constructive trust on Koehler's residence. We are not persuaded.

" 'A constructive trust is an equitable remedy to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto. [Citations.]' [Citation.]" (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 457.) " 'The principal constructive trust situations are set forth in [] sections 2223 and 2224. Section 2223 provides that "[one] who *wrongfully* detains a thing is an involuntary trustee thereof, for the benefit of the owner." (Italics added.) Section 2224 provides that "[one] who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, *or other wrongful act*, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Italics added.) The only conditions necessary to create a constructive trust are those stated in the above sections.' " (*David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 894, overruled in part on other grounds in *Lee v. Hanley, supra*, 61 Cal.4th at p. 1239, original italics.)

The propriety of granting a constructive trust generally rests upon the sound discretion of the trial court. (*David Welch Co. v. Erskine & Tulley, supra*, 203 Cal.App.3d at p. 894.) The trial court here concluded that the Prinzes' "conclusory arguments" below failed to establish the necessary elements to impose a constructive trust on Koehler's house. The record supports this finding. The Prinzes' argument was limited to a few sentences suggesting that because Koehler used the misappropriated funds to pay off his mortgages, Koehler's house should be placed in a constructive trust

23

until the money is repaid.  The Prinzes did not explain what conditions are required to impose a trust on Koehler's residence or how the evidence adduced at trial satisfies those conditions.  Accordingly, the trial court did not abuse its discretion in denying their request for a constructive trust.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　Krause, J.


We concur:


　　　　/s/
Earl, P. J.


　　　　/s/
Mauro, J.